**WHITE et al. v. BLACKMAN.**

No. 5999.

Court of Civil Appeals of Texas. Texarkana.

Dec. 22, 1942.

Rehearing Denied Feb. 11, 1943.

Hurst, Leak & Burke, and E. H. Murphy, both of Longview, M. H. Barton, of Overton, Frank C. Bolton, of Henderson, and A. W. Christian, of Fort Worth, for appellants.

Bibb & Bibb, of Marshall, and Cecil Storey, of Longview, for appellee.

WILLIAMS, Justice.

This is a suit by Bennie Blackman, widow of J. M. Blackman, against appellants, Allie B. White and others who are adult married daughters of J. M. Blackman and Mary, his first wife, in which Bennie seeks to recover and have set aside to her a homestead right in a 125-acre tract and

in an undivided ½ interest in a 36-acre tract. She also sought a recovery of all the oil and gas royalties and proceeds therefrom which had accrued subsequent to the death of J. M. Blackman and which would accrue so long as she continued to use and occupy said properties as her homestead. The larger tract was the separate property of J. M. Blackman, and the small tract was the community property of J. M. Blackman and Mary, his first wife, who died intestate in 1932. Prior to Mary's death, she and J. M. Blackman executed oil and gas leases covering both tracts. J. M. Blackman married appellee in 1933. No children were born to this marriage. J. M. Blackman died in 1940, leaving a will which was duly probated and under which he bequeathed above lands to his four daughters, appellants here. Other provisions of the will are to be observed later.

It is without controversy that the larger tract was the homestead and so occupied by J. M. Blackman and Bennie, his wife at the time of his death. The court's finding, recited in the judgment, that the 36 acres also was a part of the homestead at the time of his death is in dispute. The latter finding will not be disturbed for reasons later herein stated, and in the discussion to follow all the larger and the ½ undivided interest in the smaller tract will be treated as the homestead of J. M. and Bennie Blackman at his death. Prior to and at the time of his death there were thirty-five producing oil wells on the larger and six on the 36-acre tract. The amount of the proceeds of royalty oil received by the administratrix and produced subsequent to J. M. Blackman's death and the amounts held in suspense by the oil companies not being in dispute were stipulated.

A trial was had to the court. The 125-acre tract and a ½ undivided interest in the 36 acres was impressed with a homestead estate in favor of Bennie, the surviving wife. The judgment entered further decreed to appellee a recovery of all proceeds of oil and gas royalties produced since the death of J. M. Blackman from the larger tract and ½ the proceeds of such royalty oil produced from the 36-acre tract, together with all the proceeds of oil and gas royalties that may be produced during her natural life, or so long as Bennie elects to use above lands as her homestead.

Under the 4th point, which substantially embraces the first five points presented, appellants assert that the trial court erred in "awarding Bennie Blackman, as the widow of J. M. Blackman, deceased, all of the royalties from the homestead of J. M. Blackman,—the plaintiff being entitled only to the amount of the interest, during her lifetime so long as she may occupy the land as a homestead, on the proceeds of such royalties invested at interest." The "open mine" theory is invoked by appellee to support the judgment entered.

■ The homestead rights of the survivor in the separate estate of the deceased who died testate is here involved. With respect to the homestead interest in land created by Secs. 51 and 52 of Art. 16 of the Constitution of Texas, Vernon's Ann.St. and Art. 3501, R.C.S. of 1925, the Commission of Appeals in Sargeant v. Sargeant, 118 Tex. 343, 15 S.W.2d 589, 593, adopted by our Supreme Court, said: "It is clear to us that the homestead right in land contains every element of a life estate, and is therefore at least in the nature of a legal life estate, or, in other words, a life estate created by operation of law."

In Swayne v. Lone Acre Oil Co., 98 Tex. 597, 86 S.W. 740, 743, 69 L.R.A. 986, 8 Ann.Cas. 1117, our Supreme Court held that the common law rule with respect to the incidents of a life estate were applicable to the rights of the owner of a legal life estate in ⅓ of the land of the intestate created by virtue of Art. 2571, R.C.S. of Texas. Involved there was royalty oil from wells developed and produced subsequent to the creation of a legal (statutory) life estate. A recovery of such royalty was denied, giving the reason that "the right of the life tenant is. to the use, and not to the corpus, of the estate."

"The rights of owners of life interests of realty in minerals are predicated primarily upon doctrines which have grown up from the common-law rules of waste." 33 Am.Jur. p. 829. "In accordance with an ancient principle which accords a life tenant the issues and profits of real property in which a life estate has been granted, * * * a legal life tenant * * * may continue to work or have operated (oil wells) mines or mineral deposits that were open when the life interest commenced, or to receive the proceeds (royalties) of such operation." 33 Am.Jur. p.

534

829, Sec. 328, p. 835 Sec. 331; Lawley v. Richardson, 101 Okl. 40, 223 P. 156, 43 A.L.R. 803, and authorities collated on page 813; Summers Oil & Gas, pp. 618, 619; 31 C.J.S., Estates, p. 49 § 42. This rule being based upon the theory, as expressed in 2d Blackstone's Commentaries, p. 282, "it has now become the mere annual profit of the land," or as stated in Summers Oil & Gas, p. 618, 619, "the life tenant is doing no more than claiming the yearly profits of the land." See Summers Oil & Gas, Perm.Ed., § 613.

The rights of the widow to the corpus (royalty) and not to the interest on the royalty, was recognized in Petrus v. Cage Bros., Tex.Civ.App., 128 S.W.2d 537, 538, writ refused. It is there stated: "Mrs. Petrus, upon the death of her spouse, took an estate for life, by operation of the law, in that part of the homestead which descended in fee, upon the death of the father, to their children, appellants herein, and by virtue of her said estate therein thus acquired, she had the right to continue to take caliche from the mine which had been opened prior to and was being operated at, the time her life estate came into existence * * *. The right to operate may be exercised by the surviving spouse in person, or through any other agency selected by her."

█ It appears that above decision necessarily was predicated upon the theory that the royalties from the mines became "annual profit of the land." If so, such basis is not in harmony with the settled law of this state that oil and gas in place is a part of the corpus of the property itself and the "royalties" received therefrom are not "rents" or "income" or "profits." State v. Hatcher, 115 Tex. 332, 281 S.W. 192; Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021; Stephens v. Stephens, Tex. Civ.App., 292 S.W. 290; Sheppard v. Stanolind Oil & Gas Co., Tex.Civ.App., 125 S.W.2d 643, 647; 31 T.J. p. 518. To limit the right of the surviving widow here to the use of the corpus of the royalty, that is, to the interest on the royalty derived from the wells, for her natural life unless sooner terminated by her abandonment of the lands as a homestead, would be in accord with the authorities last cited as well as Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620, 625; would be in keeping with the general rule that "a life tenant can do nothing during the continuance of his estate to impair the estate in remainder * * * must use reasonable precautions to preserve the property intact without injury or diminution." 31 C.J.S., Estate, § 34, p. 43; Coffman v. Gulf, Colo. & S. F. Ry. Co., Tex.Com.App., 23 S.W.2d 304, and authorities there collated; and would give effect to the provisions of Arts. 3496 and 3501, each of which limits the rights of a survivor in a homestead to its use or occupancy.

The application of the "open mine theory" to the facts here will result in such a depletion and impairment of the corpus as to leave it as a skeleton or ghost for the remainderman, for the production from the wells, if continued, will appropriate all the oil from the land prior to the end of this widow's life expectancy (19.5 years). This result, a gross injustice to the married daughters (remaindermen), a testator would be helpless to limit or prevent. White v. Sparks, Tex.Civ. App., 118 S.W.2d 649, 22 T.J. p. 351.

█ In view of the Supreme Court's refusal of an application for writ of error in Petrus v. Cage Bros., supra, which is controlling upon this and other courts of civil appeals, and solely for such reason, the judgment entered predicated upon the "open mine" doctrine will not be disturbed.

J. M. Blackman's will provides that Bennie "is to have the choice of taking such rights as are given under the statutes in my estate" or if she accepted under the will she was to have $1,000 cash, a debt due the testator by her father of $1,000, the use of their residence with the surface rights of 20 acres and an annuity of approximately $60 a month, to be derived and paid out of $12,000 annuity bonds that deceased had contracted for with a named insurance company. The will provided for the payment by the estate to the insurance company of any balance which might be due on the annuity contract. Upon the application by Allie White, the executrix, the will was admitted to probate. Bennie, who had been informed that she had the right to take under the will or she could rely upon her statutory rights, accompanied the executrix to the court house and was present when the will was admitted to probate on May 6, 1940. The executrix executed and Bennie received and cashed a check for $50 dated May 25, 1940. The next check, dated June 18, 1940, for $50 so issued and cashed, bears notation, "This check is accepted as only as advanced but not under the terms of the

will." Following the probate court's order of a widow's allowance to Bennie of $75 monthly for six months, entered on September 6, 1940, she received and cashed a check dated September 14th for $200 and a check dated October 18th for $150, each carrying notation "for widow's allowance."

The 7th point urges that "appellee having elected to accept the legacy under the will by accepting part of the money that was bequeathed to her, she is now estopped to reject that acceptance and claim under the statutes as provided for in his will." Four hundred and fifty dollars, the total of above checks, represent the amount of moneys received by Bennie. Of the checks, the one dated May 25th fails to carry a notation in explanation of what it represented. Directing our attention to the import of Bennie's act in accepting the check dated May 25th, it appears from the evidence heard by the trial court that on May 6, 1940, when the will was probated, and for some time thereafter, litigants and the attorney representing the estate had not definitely ascertained the value of the annuity contract. Later, after it was learned that the first payment under the annuity contract would not become due until 1951, the attorney suggested some plan be worked out by which the estate pay the $60 monthly. No agreement was reached on this suggestion. The foregoing reflects the situation existing at the time Bennie accepted the first check. In explanation of her acceptance of the first check, Bennie testified that the attorney for the estate told her it was an advance and part of her allowance; that she never intended or said she would accept under the will. In Dunn v. Vinyard, Tex.Com.App., 251 S.W. 1043, 1046, applicable here, it is stated, "It may be generally said that two things are necessary in order that acts relied upon will amount to an election: First, the party must have had knowledge of his rights; that is, he must have had knowledge of the condition and extent of the estate, and of his duty to choose between the inconsistent rights; second, that he intended to elect, as shown by his words and acts, viewed in the light of all the circumstances." See, also, Packard v. De Miranda, Tex.Civ.App., 146 S.W. 211; Bumpass v. Johnson, Tex.Com.App., 285 S.W. 272.

It cannot be said from the facts under this record that Bennie's acceptance of the first check would, as a matter of law, constitute an election on her part to take under the will. If it be conceded that the $50 paid May 25, 1940, did not constitute a part of the widow's allowance, still the uncertainty of the value of the annuity, the negotiations with respect thereto, and a plan in substitution thereof presented at least a question of fact as to her intent to elect under the will. The action of the trial court in concluding that she had not elected will not be disturbed. 3 Tex.Jur. p. 1059, Sec. 747.

The 9th point, complaining of the court's holding that the 36 acres was a part of the homestead, is overruled. 17 Tex.Jur. p. 910. There is evidence to the effect that the smaller tract was originally and later at intervals worked and cultivated by J. M. Blackman, personally, in cotton, corn and cane in connection with the larger tract on which he resided and had his gardens; that the smaller tract had been used by him to pasture mules and cows, and that until his death he continued to cultivate and use it through tenants in connection with and in the same manner as the larger tract; that the rent of ⅓ of the corn of feedstuff grown on the smaller tract was carried to and placed in Blackman's barn and fed to his stock.

In the 6th point, appellants complain of the failure of the court to provide in the judgment that the life tenant is chargeable with all taxes, all expenses of administration of the estate by the executrix, and the debts owed by the estate. Although appellants pleaded payment by the executrix of various debts incurred by J. M. Blackman and of expenses and court costs incurred in the administration of the estate, they introduced no evidence in support thereof, except the payment of $960.-19 ad valorem taxes for the year 1940–1941. This amount was charged to appellee. Appellants alleged that the United States Government was asserting an estate tax claim of approximately $5,000 with a continuing penalty. The evidence reflects that this claim is in dispute and the amount due has not and will not be determined until a counterclaim is disposed of between the Government and the estate. The Government is not a party to this suit. The inventory of the estate is not before us. Under this record, we fail to see how the trial court could have entered a decree with respect to the estate tax; any future ad valorem or other taxes that

may be levied or might accrue against the estate during the life expectancy of the widow; or future costs of administration. The judgment entered is silent as to any estate tax or any future taxes or expenses that may accrue. The matter presented in point 6 is overruled, but with the observation that we are not called upon under the state of the present record to determine the liability of appellee's homestead rights for the estate tax or for any future taxes or expenses that may accrue.

The judgment of the trial court is affirmed.