### CLAYTON et al. v. CANIDA.
#### No. 6442.

Court of Civil Appeals of Texas. Texarkana.
Sept. 8, 1949.

Rehearing Denied Sept. 29, 1949.

Angus G. Wynne, Longview, Philip Brin, Longview, Sam B. Hall, Marshall, for appellants.

W. C. Holcombe, Longview, Hurst & Burke, Longview, for appellee.

HALL, Chief Justice.

Rass R. Canida, who obtained a divorce in Arizona in 1943 from his wife, Pinkie L. Canida, now deceased, brought this suit claiming all of her personal property, one-half of her oil royalties and real estate, and a homestead interest in the other one-half of her oil and real estate on the theory that the Arizona divorce was not valid, but, that if it was valid, he had again become the husband of Pinkie L. Canida by virtue of a common-law marriage. Defendants were brothers, sisters, and other heirs of the deceased. Deceased left no children. The jury found that plaintiff had entered into such common-law marriage with the deceased Pinkie L. Canida, had established a homestead and had not abandoned it.

The trial court awarded plaintiff judgment for all personal property, for one-half of oil royalties and real estate owned

by deceased, and for the other one-half of such royalties and real estate as long as he should live and use them as a homestead.

Appellants' points 1 and 2 assert that the trial court erred in permitting Rass Canida, appellee, to testify to certain transactions with his deceased wife, Pinkie, and permitting the attorney for Canida to bring before the jury objectionable testimony of transactions between appellee and his deceased wife.

Rass Canida and Pinkie Clayton were married July 8, 1932, in Gregg County, Texas, and lived together as husband and wife until July 1, 1943. On this last date a judgment of divorce was entered by the Superior Court of Cochise County, Arizona, against Pinkie at the suit of appellee. No further notice will be taken of the marriage or the divorce decree that dissolved it, but our discussion will be directed solely to the law relating to the common-law marriage status of the defendant and his deceased wife, Pinkie. The trial court limited the jury's consideration of the common-law marriage of appellee and Pinkie to acts and conduct of the parties on and after February 15, 1946, the date appellee returned to Gregg County after his service in the army. Appellee contends that since no other verdict than that reached by the jury and rendered by the court could be sustained by the evidence adduced upon the trial, independent of the objectionable testimony of Rass Canida, appellee, the admission of such testimony would be harmless under Rule 434, Texas Rules of Civil Procedure, and the authorities of this state. Some thirty or thirty-five witnesses, both white and colored neighbors of appellee and his wife, Pinkie, after his return from his service in the army, testified that appellee and Pinkie lived together in the rock house on the Clayton lease, together ran a liquor store near said house, and acted and conducted themselves as husband and wife. Most, if not all, of this array of witnesses testified that the general reputation in the community in which appellee and Pinkie lived was that they were husband and wife. Several of the witnesses testified that appellee spoke of Pinkie as his wife, and introduced them to her as his wife; others that Pinkie spoke

of Rass as her husband. The record also reflects that a few months before Pinkie's death she took out an insurance policy in which she made Rass Canida beneficiary, and showed his relationship to her as "husband." The proceeds of the policy were paid to Rass after Pinkie's death. There is evidence also to the effect that Pinkie paid some of the monthly premiums on this policy. The information upon which the above policy issued was given to the agent by Pinkie and this application is dated August 11, 1947. The record shows further that the permit issued by the Liquor Control Board to sell liquor in the package house operated by appellee and Pinkie was issued in the name of appellee. There appears in the record also a contract dated May 20, 1947, between Rass R. Canida, appellee, and Pinkie Canida, his "wife," on the one hand, and Matilda Clayton on the other, whereby it was agreed "for Matilda Clayton to hold Rass R. Canida's armed force leave bond until the amount of said debt is paid, which is $525.00." There is also in the record certified copy of amended income tax return dated May 30, 1947, signed by Pinkie Clayton Canida and Rass R. Canida in which Pinkie lists, under exemptions, Rass Canida as her husband. There appears in the record a joint income tax return for 1946, filed by Rass R. and Pinkie Clayton Canida in which under exemptions Pinkie Clayton Canida is listed as wife of Rass Canida. This income tax return was filed on March 12, 1947. The evidence shows further that when Pinkie died appellee, her husband, made all funeral arrangements and paid for a portion thereof. The evidence offered by the appellants is more of a negative nature; it does not dispute that appellee stayed at the rock house, a part of his time. Some of appellants' witnesses say that they never heard it rumored in the community that appellee and Pinkie were generally reputed to be husband and wife. Coreen, sister of Pinkie and an appellant, testified that on or about the first of September, 1947, Rass carried Pinkie to Dallas for medical treatment, and after said treatment, brought her back to Longview. There is testimony in the record from the appellants that Rass in the early part of

1947, went to Houston and stayed there until about two weeks before his wife died. There is testimony that Rass was seen in company with another Negro woman shortly before his wife died, whom he later married.

◼ We think the admissible testimony offered by appellee conclusively established the consummation of a common-law marriage on and after February 15, 1946, as found by the jury. Certainly there is not sufficient evidence in the record to support a contrary jury finding. That being true, the alleged inadmissible testimony of appellee as to conversations and transactions with his deceased wife did not cause or bring about an improper verdict and judgment. Rule 434, T.R.C.P. in part reads as follows:

"Provided, first, that no judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, *unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court; * * *.*" (Italics ours.)

The above rule is applicable to the situation here, and affords ample authority for our holding next above set out. Ligon v. Green, Tex.Civ.App., 206 S.W.2d 629; Texas Employers' Insurance Ass'n v. Frankum, Tex.Civ.App., 215 S.W.2d 899; Leyendecker v. Harlow, Tex.Civ.App., 189 S.W.2d 706. A controlling authority as to quantum of proof in cases of this character, we think, is De Beque v. Ligon, Tex.Com.App., 292 S.W. 157, opinion approved by Sup.Ct. In connection with the above case see same case by the Fort Worth Court of Civil Appeals, 286 S.W. 749, in which the facts are set out in detail. Moreover, it is thought that the evidence complained of, that is, the testimony of appellee to transactions or conversations with the deceased during 1943, 1944, and 1945, acts and conduct between appellee and Pinkie while he was in the army, could not relate to the issue of common-law marriage, as limited by the trial court in the charge to the date: "on and after February 15, 1946." As we see said testimony it could have no bearing whatsoever on the issue of common-law marriage which had its inception long after said conversations and acts occurred.

◼ Appellants' point 8 asserts that the trial court erred in permitting attorney Buford D. Battle "to testify as to privileged communications from his client, Pinkie L. Canida, deceased: (a) with reference to her 1946 income tax return; (b) with reference to her amended income tax return for 1945. It is undisputed that Battle was employed by Pinkie to assist her in making the two income tax returns. It is also undisputed that he has license to practice law, and on his office door are the words "attorney at law." He is also a C. P. A. Battle testified that he had handled one case in court, an adoption case, since he had a license to practice law; that he made his living as a certified public accountant; and that he acted in this capacity when he assisted Pinkie in making the two income tax returns. We do not think the communication from Pinkie to Battle is in any sense privileged. The information upon which he made out her income tax returns was given to him by Pinkie for the purpose of transmitting it to the United States Internal Revenue Department, where it became a public record of said department. Certainly statements made under such conditions are not privileged even though it be conceded that Battle was acting as an attorney rather than a certified public accountant at the time he assisted Pinkie in making the returns. Texas & P. Ry. Co. v. Spann, Tex.Civ.App., 173 S.W. 600, writ refused. We think the evidence conclusively shows that Battle was acting as a certified public accountant at the time he assisted Pinkie in making out her income tax returns. From the tenor of Battle's testimony that is the way he understood it and no one else contradicts him. Moreover, Matilda and Coreen, two of Pinkie's sisters, were present at the time, which rendered Battle's testimony admissible. Livez v. U. S., 5 Cir., 279 F. 496, certiorari

denied 260 U.S. 721, 43 S.Ct. 12, 67 L.Ed. 481; Hayes v. Pennock, Tex.Civ.App., 192 S.W.2d 169, writ refused, no reversible error; Coe v. Widener, Tex.Civ.App., 122 S.W.2d 258.

■ By points 9 and 10 appellants assert that the trial court erred in permitting introduction in evidence of certified copies of the 1946 income tax return and the amended income tax return for 1945, because it violated the best evidence rule. The papers introduced were certified copies under the seal of the Treasury Department by an officer in the Records Division of that office, said copies were made pursuant to the provision of Section 661, Ch. 17, Title 28 of the United States Code, being Section 882 of the Revised Statutes of the United States [Revised Judicial Code, 28 U.S.C.A. § 1733]. Under such circumstances we think that the copies were properly admitted. They were not secondary evidence, but original testimony. Any properly certified public record is admissible. The certified copy stands in the place of the original. American Sulphur Royalty Co. of Texas v. Freeport Sulphur Co., Tex.Civ.App., 276 S.W. 448, affirmed Sup. Ct., 117 Tex. 439, 6 S.W.2d 1039, 60 A.L.R. 890; 32 C.J.S., Evidence, § 649, p. 512.

■ By their point 12 appellants assert that the trial court erred in decreeing plaintiff's (appellee's) homestead interest to include the right to appropriate the oil and gas royalties produced rather than impounding them for the remaindermen and allowing said homestead claimant the use of the interest earned therefrom. We cannot sustain this point. White v. Blackman, Tex.Civ.App., 168 S.W.2d 531 and authorities there cited. We realize the hardship that will result from the application of the rule announced in White v. Blackman, supra, but that rule now has the sanction of the Supreme Court, and we cannot overrule it.

We have examined all other points advanced by appellants and have concluded that none of them present error and they are respectfully overruled.

The judgment of the trial court is affirmed.