## In re TEXAS FARMERS INSURANCE EXCHANGE.

### No. 06–98–00183–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Feb. 17, 1999.

Decided Feb. 18, 1999.

Rehearing Overruled March 30, 1999.

**90.** *Id.*

**91.** *Id.*

**92.** *Id.;* TEX. R. CIV. P. 2.

**93.** *Id.* at 49.

**94.** TEX.R.APP. R. 31(e)(3) (Tex. and Tex.Crim. App.1986, amended 1997) (currently found at TEX.R.APP. P. 21.8(c)).

**95.** *Id.*

Gregory Alan Scott, Scott, Bowman & Stella, Dallas, for Relator.

Jesse L. Nickerson, III, Paris, Michael D. Mosher, Michael D. Mosher & Associates, Paris, for Real Parties in Interest.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

This original proceeding arises from an action in the Sixth District Court of Lamar County where the real parties in interest, the insureds, have alleged breach of contract, bad faith, and violations of the Texas Insurance Code and Deceptive Trade Practices Act following a denial of a claim on a homeowners' policy after a house fire. Relator, Texas Farmers Insurance Exchange (Farmers) is the defendant in the

action and has petitioned this Court for a writ of mandamus ordering the respondent judge, Honorable Jim D. Lovett, to withdraw an October 15, 1998 order denying a motion to quash and enter an order that all work product and opinions of Relator's counsel are exempt from discovery under the attorney work product exemption, party communications exemption, and attorney-client privilege. Paul and Treva Chappell, the real parties in interest, have filed a response opposing Relator's petition.

On May 13, 1996, the Chappells' residence was damaged by a fire. The Chappells lodged a claim under a standard Texas homeowners' policy issued to them by Farmers. On May 31, 1996, Farmers received a report from Mike Keller, a fire investigator hired by Farmers to conduct a fire origin and cause investigation. The report concluded that no accidental-ignition source could be identified as the cause of the fire. In June 1996, Farmers hired an attorney, Gregory Scott, to conduct Examinations Under Oath (EUO) of the Chappells. The EUOs were conducted on July 30, 1996. A letter from Farmers dated September 17, 1996 informed the Chappells that their claim was denied because Farmers had concluded that the fire was intentionally set, either by the Chappells or with their knowledge. In the letter, Farmers also contended that their investigation revealed that the Chappells engaged in material misrepresentations in the presentment of their claim.

The Chappells filed suit against Farmers on October 16, 1997 claiming that Farmers unjustifiably denied liability under the homeowners' policy and had acted in bad faith. On May 27, 1998, the Chappells noticed the deposition of Gregory Scott and included a subpoena duces tecum for the following items:

1. Any and all files maintained by or in your possession concerning this matter, including the adjuster's file, investi-gation reports etc., including the report of the fire investigator.

2. All documents in your possession or control relating to any aspect of this lawsuit, including all claims against the Chappells.

On June 17, 1998, Farmers filed a motion to quash, contending that Scott's knowledge of and involvement with the claim fit within the attorney-client privilege, attorney work product, party communication, and witness statement exemptions. Farmers claimed that the documentation and information sought by the subpoena was compiled in anticipation of litigation as defined by the Texas Supreme Court in *National Tank Co. v. Brotherton*.[1]

The trial court held a hearing on the motion to quash on August 8, 1998. Scott testified at the hearing. Following the hearing, at the trial court's request, Farmers filed the EUO transcripts of Paul and Treva Chappell, transcripts of the Chappells' recorded statements, a letter dated June 28, 1996 from Scott to the Chappells requesting their submission to EUOs, and the May 31, 1996 fire cause and origin report authored by Mike Keller. In an order signed October 15, 1998, the trial court found that Farmers had failed to present sufficient evidence in opposition to the deposition with subpoena duces tecum to support its claimed party communications, witness statement, and attorney work product exemptions, and attorney-client privilege. The court further held that Farmers was conducting a routine investigation of a fire of suspicious origin, that Gregory Scott was acting as an investigator, not an attorney, until suit was filed by the Chappells, and that Farmers had no reasonable basis to anticipate litigation. The court held that all documents responsive to the subpoena duces tecum are discoverable if such documents existed prior to the time the Chappells filed suit. The motion to quash was overruled.

1. 851 S.W.2d 193 (Tex.1993).

Farmers sought a rehearing on the motion to quash and submitted additional evidence to support the motion to quash. The trial court overruled the motion for rehearing without holding a hearing. Farmers now seeks mandamus relief from the trial court's order on the motion to quash.

Mandamus issues only when the mandamus record establishes (1) a clear abuse of discretion or the violation of a duty imposed by law, and (2) the absence of a clear and adequate remedy at law. *Cantu v. Longoria,* 878 S.W.2d 131, 132 (Tex.1994); *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992). Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion or, in the absence of another statutory remedy, when the trial court fails to observe a mandatory statutory provision conferring a right or forbidding a particular action. *Abor v. Black,* 695 S.W.2d 564, 567 (Tex. 1985).

With respect to the resolution of factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *Brady v. Fourteenth Court of Appeals,* 795 S.W.2d 712, 714 (Tex.1990). The relator must establish that the trial court could reasonably have reached only one decision. *Walker,* 827 S.W.2d at 840. Review of a trial court's determination of legal principles controlling its ruling applies a much less deferential standard, since the trial court has no discretion in determining what the law is or applying the law to those facts.

Our review is much less deferential with respect to a trial court's determination of the legal principles controlling its ruling, because "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Huie v. DeShazo,* 922 S.W.2d 920, 927 (Tex.1996); *Walker,* 827 S.W.2d at 840. Consequently, the trial court's erroneous legal conclusion, even in an unsettled area of law, is an abuse of discretion. *Huie,* 922 S.W.2d at 927–28.

A discovery order is improper if it compromises a person's right to possible claims of privilege or mandates the disclosure of privileged information that exceeds the scope of discovery. *Axelson, Inc. v. McIlhany,* 798 S.W.2d 550, 553 (Tex.1990); *Mutter v. Wood,* 744 S.W.2d 600, 601 (Tex. 1988). Mandamus "is the appropriate remedy when the trial court has erroneously granted discovery of nondiscoverable documents. Remedy by appeal in that case is ineffective, because once revealed, the documents cannot be protected." *Cigna Corp. v. Spears,* 838 S.W.2d 561, 564 (Tex.App.-San Antonio 1992, orig. proceeding) (citing *Walker v. Packer,* 827 S.W.2d 833, 843 (Tex.1992)).

A party that seeks to exclude any matter from discovery on the basis of an exemption or immunity from discovery must specifically plead the particular exemption or immunity and produce evidence supporting such claim in the form of affidavits or live testimony at a hearing. Tex.R. Civ. P. 166b(4); *Humphreys v. Caldwell,* 888 S.W.2d 469, 470 (Tex.1994). The burden is on the party asserting a privilege from discovery to produce evidence concerning its applicability. *Humphreys,* 888 S.W.2d at 470.

The attorney-client privilege protects confidential communications between a lawyer and a client or their respective representatives made to facilitate the rendition of professional legal services to the client. Tex.R. Evid. 503(b). This privilege is not limited to communications made in anticipation of litigation. However, the privilege does not apply if the attorney is acting in a capacity other than that of an attorney.[2]

---

2. See *Clayton v. Canida,* 223 S.W.2d 264, 266 (Tex.Civ.App.-Texarkana 1949, no writ) (attorney acting as accountant); *Pondrum v. Gray,* 298 S.W. 409, 412 (Tex. Comm'n App.1927, holding approved)(communications to attorney acting as scrivener not privileged).

■ In the October 15, 1998 order overruling the motion to quash, the trial court found that Scott was acting as an investigator, not as an attorney, until the Chappells filed suit. In the motion to quash, Farmers stated that Scott's "sole responsibility prior to the filing of the lawsuit was the taking of the Plaintiffs' Examination Under Oath and reporting the results of same to Farmers." Scott testified at the hearing that he was hired to obtain facts by taking the Chappells' examinations under oath and give a legal opinion to Farmers regarding potential litigation issues. At the hearing on the motion to quash, Scott describes the EUO as "a pre-lawsuit investigative tool which has been used by insurers in Texas for about 70 years." Scott also testified that he was not involved in the investigation of the claim and that he was to just take the EUO and forward the transcript to Farmers for its evaluation.

The June 26, 1996 letter from Farmers to Scott, whereby Scott contends Farmers engaged Scott for his professional legal services, asks Scott to "schedule an Examination Under Oath at your earliest convenience, and provide [Farmers] with your recommendation and summary of the statement." Scott spoke with the claim supervisor regarding this case shortly after the letter, but could not remember the specifics of the conversation.

■ Based on the evidence presented at the hearing, the trial court did not abuse its discretion in determining that Scott was acting as an investigator and was conducting a routine investigation of a fire of suspicious origin. We are mindful that the attorney-client privilege does not extend to the disclosure of underlying facts, but merely to the disclosure of attorney-client communications. *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

However, although the attorney-client privilege would apply to communications between Scott and Farmers concerning legal strategy, assessments, and conclusions, the privilege does not operate as a blanket privilege covering all of the communications between the two. For instance, the privilege would not apply to those communications concerning bare facts. If we were to so hold, insurance companies could simply hire attorneys as investigators at the beginning of a claim investigation and claim privilege as to all the information gathered. This is not the intent of the privilege. Scott could answer questions in a deposition concerning facts gathered during the course of his investigation while he was acting as an investigator, but could claim the attorney-client privilege if asked to divulge his legal conclusions based upon those facts.

We find that the evidence shows that Scott was acting as an investigator for Farmers and not as an attorney. Such communications made in that capacity are not privileged. If Scott demonstrates that he communicated to Farmers while acting in his professional capacity as an attorney, such communications would be subject to the attorney-client privilege, even prior to the time which Farmers anticipated litigation. Farmers' request for relief on this issue is overruled.

Farmers also argues that the work product exemption protects documentation from disclosure. *See* TEX.R. CIV. P. 166b(3)(a). The work product exemption protects documents prepared by attorneys or their agents that contain the attorney's mental processes, conclusions, or legal theories in anticipation of litigation. *See Humphreys*, 888 S.W.2d at 471; *National Tank*, 851 S.W.2d at 200. Farmers also contends that documents sought by the subpoena are exempt from discovery by the investigative or party communication exemption. This exemption protects only those communications made during or in anticipation of the particular suit in which the privilege is asserted. TEX.R. CIV. P. 166b(3)(d); *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 164–65 (Tex.1993); *Turbodyne Corp. v. Heard*, 720 S.W.2d 802, 804 (Tex. 1986).

■ Litigation may be anticipated when two tests are met: (1) whenever the circumstances surrounding the investigation would have indicated to a reasonable person that there was a substantial chance of litigation, and (2) the party asserting the exemption had a good faith belief that litigation would ensue. *National Tank*, 851 S.W.2d at 204. The investigation must actually be conducted for the purpose of preparing for litigation. An investigation is not conducted "in anticipation of litigation" if it is prepared for some other purpose. *Id.* If the primary motivating factor of the investigation is to determine whether the claim should be paid or settled and the potential lawsuit avoided, then it would not appear to meet the test set forth in *National Tank. Henry P. Roberts Invs., Inc. v. Kelton*, 881 S.W.2d 952, 956 (Tex. App.-Corpus Christi 1994, no writ). A party may reasonably anticipate suit being filed, and conduct an investigation to prepare for the expected litigation, before the plaintiff manifests an intent to sue. *National Tank*, 851 S.W.2d at 204. In reviewing whether litigation may be anticipated, the trial court must look to the totality of the circumstances to determine whether each prong is satisfied. *Id.*

■ The trial court found that litigation could be anticipated from October 16, 1997, the date the Chappells filed suit. Farmers contends that it anticipated litigation in relation to the Chappells' claim as early as May 31, 1996, the date that Farmers received the fire cause and origin report from Mike Keller. The Chappells concede that litigation could be anticipated as early as December 16, 1996, when they sent a demand letter to Farmers threatening a lawsuit if Farmers did not pay the claim. We must apply the test of *National Tank* and determine when Farmers could have anticipated litigation.

At the hearing on the motion to quash, Farmers mischaracterized the Keller report as finding that the Chappells intentionally set fire to their house. The report states that no accidental ignition source for the fire could be identified. The Keller report would not have led a reasonable person to anticipate litigation. After this report, Farmers hired Scott to take the EUOs of the Chappells. Scott testified at the hearing on the motion to quash that he was not told that Farmers anticipated litigation at the time he was hired, nor did he tell the Chappells that he was hired to take their EUOs in anticipation of litigation. In Scott's letter to the Chappells informing them that he was to take their EUOs, he stated that EUOs were necessary to "develop the relevant facts so that Farmers may evaluate [the] claim." The EUOs were taken on July 30, 1996. Farmers denied the Chappells' claim on September 17, 1996.

There is no evidence in the record, prior to the denial of the claim, that Farmers reasonably anticipated litigation. Prior to the denial of the claim, Farmers appeared to be gathering evidence in order to determine if the Chappells' claim should be paid. We recognize that there are circumstances which, prior to the denial of a claim, would lead a reasonable person to anticipate litigation. *See National Tank*, 851 S.W.2d at 204. However, the circumstances of this case, prior to the denial of the claim, do not satisfy the first prong of the "anticipation of litigation" test. The record does not indicate that litigation could have been anticipated until Farmers sent a denial letter to the Chappells contending that the fire was intentionally set and that the Chappells had engaged in misrepresentations and fraud. Under these circumstances, a reasonable person could conclude that there is a substantial chance of litigation.

As for the second prong, the evidence never demonstrates that Farmers held a good faith belief that litigation would ensue. Farmers does not claim that it had already determined that it would likely deny the claim immediately after receiving the Keller report and pursued further investigations in anticipation of litigation. When an insurer seeks to shield its investi-

gation from discovery as having been prepared in anticipation of litigation as the primary purpose of the investigation, we would expect it to detail and justify its emphasis on litigation rather than claim settlement. In the present case, Farmers hired Scott to take the EUOs after it had received the Keller report and did not inform Scott that it anticipated litigation. Although the claim supervisor, Julie Runnels, stated in her affidavit that Farmers anticipated litigation as early as May 31, 1996, she failed to inform Scott of this fact when he was engaged to take the EUOs, and no other evidence is provided to substantiate that Farmers anticipated litigation at this date.

In applying the two-prong test of *National Tank*, we believe that circumstances surrounding the denial of this claim would indicate to a reasonable person that a substantial chance of litigation existed. We find that the trial court abused its discretion in determining that litigation could not be anticipated until the Chappells actually filed suit on October 16, 1997. We believe that litigation could have been anticipated from September 17, 1996, the date the claim was denied. As stated above, Farmers' request for relief on this issue is granted.

The petition for writ of mandamus is conditionally granted in part. We direct the district court to modify its order overruling the motion to quash to permit discovery exemptions from the date of the denial of coverage letter, September 17, 1996, the date which we determined that litigation could be anticipated. The writ will issue only upon the trial court's failure to comply.