TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-99-00745-CV







Harlandale Independent School District and its Board of Trustees, Appellants


v.



John Cornyn, Attorney General of the State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 98-04238, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING







 This case involves the scope of the attorney-client privilege in the context of a
request under the Texas Public Information Act. Harlandale Independent School District and its
Board of Trustees ("Harlandale") filed suit against the Attorney General seeking a declaratory
judgment that a retained attorney's investigative report of a campus police officer's grievance is
excepted from public disclosure. The district court denied Harlandale relief. We reverse the
district court order and render judgment in favor of Harlandale.


BACKGROUND


 On March 7, 1997, a female police officer employed by the Harlandale campus
police department reported to Corporal Kenneth Hannah that she had been assaulted earlier that
day by Sergeant Juan Villarreal. Harlandale Police Chief Ben Hart reviewed the complaint and
determined that there was no evidence of assault. On April 28, 1997, the female officer filed a
formal grievance reurging her assault complaint and also alleging that Sergeant Villarreal had
subjected her to sexual harassment. After an investigation, Harlandale concluded that while the
evidence was not sufficient to substantiate all of the complainant's allegations, there was sufficient
evidence to support her claim that Villarreal had made inappropriate and demeaning comments
to her in the workplace. Harlandale sent a letter of reprimand to Villarreal and placed a copy of
the letter in his employment file.

 After receiving the reprimand letter, Villarreal filed a formal grievance with
Harlandale contending that he had been unable to adequately defend himself from the
complainant's allegations because Harlandale had failed to provide him proper notice of the
allegations and had limited his access to relevant information and witnesses. In an August 22,
1997 letter to Harlandale, Villarreal reiterated his prior complaints, made additional complaints
about the Harlandale Board of Trustees, and stated that if any adverse action was taken against
him as a result of his complaints, he would consider it retaliation by Harlandale. On September 12, 1997, Harlandale hired attorney Peggy Pou to review Villarreal's
complaints and to provide her legal analysis. The retention letter states:


The Board of Trustees have determined that they would like for you to investigate
all the allegations made by the author of the complaint. After the fact-finding has
been completed, the Board of Trustees would like to receive your legal analysis of
the matters investigated. This legal analysis would include the legal liabilities and
consequences facing the School District and the Board of Trustees.



Pou conducted interviews and prepared a report. On January 5, 1998, a San Antonio Express-
News reporter requested Pou's report pursuant to the Public Information Act. See Tex. Gov't
Code Ann. §§ 552.001-.353 (West 1994 & Supp. 2000). The initial request asked for "copies of
any correspondence, letters, memos, including the final report from Peggy Pou on the
investigation of police Sgt. Juan Villarreal's grievance filed at Harlandale School District Aug.
22." The reporter later narrowed the scope of the request to include only Pou's written report
and the exhibits attached to the report.

 On January 20, 1998, Harlandale requested an opinion from the Open Records
division of the Attorney General's office regarding whether Pou's report was required to be
disclosed to the newspaper reporter. In an informal letter opinion designated OR98-0930, the
Attorney General ruled that extensive portions of the report are subject to disclosure because they
consist of "factual information compiled by an attorney acting as an investigator." (1) The Attorney
General did not require Harlandale to disclose the portions of the report designated as Pou's legal
advice or opinions. (2)

 Harlandale filed suit for declaratory relief to challenge the Attorney General's
ruling. After a bench trial at which no testimony was received, the district court affirmed the
Attorney General's decision. In an eleven-page opinion, the district court rejected Harlandale's
contention that the facts in Pou's report should be excepted from disclosure because they are
presented in connection with her legal opinions. The court concluded that the report is "in part
a summary of Ms. Pou's factual investigation and in part a legal opinion memorandum," and that
the factual and legal portions are, for the most part, distinct from each other. Harlandale appeals
the district court order, arguing that Pou's entire report is excepted from disclosure by sections
552.101, 552.103, and 552.107 of the Public Information Act. See Tex. Gov't Code Ann.
§§ 552.101, .103, .107 (West 1994 & Supp. 2000).


DISCUSSION


 Declaratory judgments are reviewed under the same standards as other judgments
or decrees. See Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (West 1997). Because the trial
court did not make findings of fact and conclusions of law, (3) we presume the court found all fact
questions in support of its judgment, and we must affirm the judgment on any valid legal theory
finding support in the pleadings and evidence. See Point Lookout West, Inc. v. Whorton, 742
S.W.2d 277, 278 (Tex. 1987); In re W.E.R., 669 S.W.2d 716, 717 (Tex. 1984).

 The Texas Public Information Act states, "[I]t is the policy of this state that each
person is entitled, unless otherwise expressly provided by law, at all times to complete
information about the affairs of government and the official acts of public officials and
employees." Tex. Gov't Code Ann. § 552.001 (West 1994) ("the Act"). (4) The Act mandates a
liberal construction to implement this policy and one that favors a request for information. See
id.; see also City of Garland v. Dallas Morning News, 43 Tex. Sup. Ct. J. 303, 304 (Jan. 13,
2000). Section 552.021 of the Act provides that "[p]ublic information is available to the public
at a minimum during the normal business hours of the governmental body." Id. § 552.021 (West
Supp. 2000).

 Upon a request for public information, a governmental body's officer for public
records must promptly produce the information for inspection or duplication, or both. See id. 
§ 552.221. The Act provides specific categories of public information, including "a completed
report, audit, evaluation, or investigation made of, for, or by a governmental body . . . ." Id.
§ 552.022. But information is not subject to required disclosure if the Act specifically excepts
it from required disclosure. See id. §§ 552.101-.123 (West 1994 & Supp. 2000).

 An exception to the general availability of public information is found in section
552.101, which provides, "Information is excepted from the requirements of Section 552.021 if
it is information considered to be confidential by law, either constitutional, statutory, or by
judicial decision." Id. § 552.101 (West 1994). Section 552.103 excepts from disclosure
information "relating to litigation . . . to which the state or a political subdivision is or may be
a party or to which an officer or employee of the state or a political subdivision, as a consequence
of the person's office or employment, is or may be a party" and that "the attorney general or the
attorney of the political subdivision has determined should be withheld from public inspection." 
Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 600. Section
552.107(1) excepts from disclosure "information that the attorney general or an attorney of a
political subdivision is prohibited from disclosing because of a duty to the client under the Texas
Rules of Civil Evidence, the Texas Rules of Criminal Evidence, or the Texas Disciplinary Rules
of Professional Conduct." Id. § 552.107(1) (West Supp. 2000). (5)

 In its first issue, Harlandale argues that Pou's report in its entirety is subject to
section 552.107(1)'s exception to disclosure because it is confidential under Rule 503 of the Texas
Rules of Evidence. Harlandale contends that the district court's implied finding that Pou was
functioning in a dual role as both an investigator and an attorney "is not legally and factually
supported by the evidence." The implied finding is significant because of its impact on the
application of attorney-client privilege. The privilege protects from disclosure only those
confidential communications between a client and his or her attorney "made for the purpose of
facilitating the rendition of professional legal services to the client . . . ." Tex. R. Evid.
503(b)(1). (6) By shielding such communications from disclosure, the attorney-client privilege
allows "unrestrained communication and contact between an attorney and client in all matters in
which the attorney's professional advice or services are sought, without fear that these confidential
communications will be disclosed by the attorney, voluntarily or involuntarily, in any legal
proceeding." Huie v. DeShazo, 922 S.W.2d 920, 922 (Tex. 1996) (citing West v. Solito, 563
S.W.2d 240, 245 (Tex. 1978)). (7)

 Attorney-client privilege therefore does not apply to communications between a
client and an attorney where the attorney is employed in a non-legal capacity, for instance as an
accountant, escrow agency, negotiator, or notary public. See, e.g., Clayton v. Canida, 223
S.W.2d 264, 266 (Tex. Civ. App.--Texarkana 1949, no writ); Pondrum v. Gray, 298 S.W. 409,
412 (Tex. Comm'n App. 1927, holding approved). (8) The Attorney General responds to
Harlandale's first issue by asserting that because Pou was not acting as an attorney in furtherance
of the rendition of professional legal services when she prepared the contested portions of her 
report, the disclosure exceptions of Government Code section 552.107(1) do not apply. Thus,
we must examine the evidence concerning the capacity in which Pou acted while employed by
Harlandale.

 In reviewing a "no evidence" challenge, we consider all the evidence in the light
most favorable to the trial court judgment, indulging every reasonable inference in favor of the
judgment. See Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 285-86 (Tex.
1994). We will uphold the implied finding if more than a scintilla of evidence supports it. See
Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995). The evidence supporting
a finding amounts to more than a scintilla if reasonable minds could arrive at the finding given
the facts proved in the particular case. See id. In reviewing a factual sufficiency challenge, the
reviewing court must examine the record to determine if there is some evidence to support the
finding and if so whether, in light of the entire record, the finding is so contrary to the weight of
the evidence as to be clearly wrong and manifestly unjust. See Cain v. Bain, 709 S.W.2d 175,
176 (Tex. 1985).

 Peggy Pou was contacted in September 1997 by Bob Ramirez, an attorney with a
San Antonio law firm employed by Harlandale as general counsel. Ramirez informed Pou that
she had been selected by Harlandale to conduct an analysis of legal liability related to the
circumstances described by Sergeant Villarreal in his August 22, 1997 letter. On September 12,
1997, Ramirez sent a letter to Pou to confirm her retention. The letter states that Pou will be
compensated at an hourly rate of $160.00 and that she may employ two associates at hourly rates
of $130.00 and $125.00, respectively. Furthermore, the letter requests that Pou investigate all
of Villarreal's allegations and that, "after the fact-finding has been completed," she deliver her
legal analysis of the matters investigated, including "the legal liabilities and consequences facing
the School District and the Board of Trustees."

 In her deposition, Pou stated that she began her task by conducting a factual
investigation of the events described in the letter. She stated, "I don't think I've ever given a
legal opinion without performing an investigation or collecting information because you can't give
a legal opinion in a vacuum." Pou also related that when she interviewed witnesses during the
investigation, she told them she was acting as Harlandale's attorney.

 Harlandale superintendent Jack Jordan explained in his deposition that prior to the
events involving Villarreal and the female officer, Harlandale had been involved in several
whistleblower suits. Jordan stated that he perceived Villarreal's August 22 letter as a clear threat
of "whistle-blower type" litigation and that his first reaction to the letter was to contact
Harlandale's general counsel, Bob Ramirez. Jordan was present when the Harlandale Board of
Trustees agreed to hire Pou, and he was informed at that time by both Ramirez and Pou that Pou
would be representing Harlandale as an attorney.

 Bess Hart, chairman of the Harlandale Board of Trustees, stated in her deposition
that the board asked general counsel Ramirez to recommend individuals to investigate Villarreal's
charges. Hart explained that the board considered both attorneys and private investigators before
deciding to hire Pou. Board member Robert Castaneda, Jr. further explained that Pou was
selected because the board felt "it was better to get an attorney because the attorney could
investigate this and then give us opinions and advice as to what we should do to protect the
District." Castaneda also stated that although the board could have hired an investigator at a
lesser cost, the board decided to employ Pou because it expected her investigation and subsequent
legal analysis would be protected from disclosure by the attorney-client privilege.

 Having reviewed the totality of the circumstances surrounding Harlandale's
retention of Pou, we conclude that Harlandale proved as a matter of law that an exception to
disclosure applies to Pou's entire report and that the district court's implied finding that Pou was
acting in a dual role cannot stand. Harlandale's retention of Pou closely resembles the retention
of outside counsel by the West Virginia Attorney General's Office in In re Allen, 106 F.3d 582,
600-05 (4th Cir. 1997), cert. denied, 522 U.S. 1047 (1998). In that case, the West Virginia
Attorney General hired an attorney named Barbara Allen to investigate possible document
mismanagement and confidentiality breaches and to prepare a written report of her findings. See
id. at 589. A government "watchdog" organization sought disclosure of the communications,
including the draft report, arguing that because Allen had acted as an investigator rather than an
attorney, the communications at issue were not made for the purpose of securing legal services. 
See id. at 601.

 Relying on the seminal case of Upjohn Co. v. United States, 449 U.S. 383 (1981), (9)
the Fourth Circuit rejected the watchdog organization's argument, reasoning that an attorney's
investigation may constitute a legal service and thus may be encompassed by the privilege. See
Allen, 106 F.3d at 601-03. The court declared that the relevant inquiry was not whether Allen
was retained to conduct an investigation, but rather, whether the investigation was related to the
rendition of legal services. See id. at 603. After examining the record, and in particular a
retention letter sent by the Attorney General to Allen, (10) the court concluded that Allen was
retained to conduct an investigation using her legal expertise; therefore, the court held that the
attorney-client privilege protected all communications between Allen and the Attorney General's
office. See id. at 604. (11)

 Applying these principles to the complete record of this case, we conclude that
Harlandale retained Pou to conduct an investigation in her capacity as an attorney. The retention
letter sent to Pou by Harlandale is strikingly similar to the one received by Allen; both letters
request the performance of an independent investigation followed by a legal analysis. Moreover,
in each case witnesses involved in the hiring process testified that an attorney was retained to
deliver a legal opinion based upon an investigation of relevant facts. Finally, both Allen's report
and Pou's report evidence that their understanding of their clients' legal concerns dictated the
direction and focus of the interviews.

 In sum, although Pou performed an independent investigation and then detailed her
findings in a discrete portion of her final report, the investigative fact-finding was not the ultimate
purpose for which she was hired. Rather, the retention letter and deposition testimony reflect that
Harlandale requested the preparation of the investigative report for the primary purpose of
obtaining legal advice. (12) Harlandale hired Pou rather than a non-attorney investigator because of
her ability to provide this advice, as well as because of Harlandale's expectation that attorney-client privilege would attach to her communications. We therefore conclude that Pou was retained
to conduct an investigation in her capacity as an attorney for the purpose of providing legal
services and advice. (13)

CONCLUSION Because we conclude that Pou functioned as an attorney throughout her employment
with Harlandale, we hold that section 552.107(1) of the Public Information Act excepts from
disclosure her entire report, not just the portions designated as her legal analysis and
recommendations. (14) We recognize the legitimate concerns of the Act as well as those of the
attorney-client privilege. In weighing these competing concerns, we need not surrender the
fundamental protections afforded by the privilege to uphold the interests of the Act. Although
Harlandale cannot therefore be compelled to furnish Pou's report upon request, a requestor may
seek the information included in the report from the same sources that were interviewed by Pou. 
See Upjohn, 449 U.S. at 396; Houston Chronicle Pub. Co. v. City of Houston, 531 S.W.2d 177,
187 (Tex. App.--Houston [14th Dist.] 1975, writ ref'd n.r.e.). Here, the press has available
effective means of finding out the details it seeks through interviews with the witnesses. We
reverse the district court order and render judgment in favor of Harlandale. As our resolution of
Harlandale's first issue is dispositive of this appeal, we need not consider Harlandale's other
arguments. (15)



 
 

 Jan P. Patterson, Justice

Before Justices Jones, Yeakel and Patterson

Reversed and Rendered

Filed: July 27, 2000

Publish

1. Pou's report is fifty pages long with fifty-eight attached exhibits. The Attorney General
determined that, except for certain redactions marked in red, the following portions of the report
are subject to disclosure: the cover page; table of contents; page 1-page 21, paragraph A; page
32, paragraph F-page 40; and tabs 1-9, 11, 13-25, 27, 32, 34, 37-42, 44-47, 50, and 51.
2. The portions of Pou's report determined by the Attorney General to be excepted from
disclosure are page 21, paragraph B-page 32, paragraph E; page 40, paragraph G-page 50; and
tabs 10, 12, 26, 28-31, 33, 35, 36, 43, 48, and 49. These portions of Pou's report are not at
issue in this appeal.
3. Two weeks after the district court issued its opinion and order, Harlandale timely
requested written findings of fact and conclusions of law. See Tex. R. Civ. P. 296. The district
court did not make the requested findings, and Harlandale failed to file a notice of past due
findings of fact within thirty days after its original request. See id. 297. Harlandale therefore
waived its request. See Las Vegas Pecan & Cattle Co. v. Zavala County, 682 S.W.2d 254, 255
(Tex. 1984). 
4. For convenience, all citations are to the current version of the Act unless otherwise
indicated.
5. The Attorney General requests that this Court determine whether Pou's report is
excepted from disclosure solely under section 552.107(1) of the Public Information Act.
6. In discussing the parameters of attorney-client privilege, Wigmore provides, "(1) Where
legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3)
the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at
his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8)
except the protection be waived." 8 J. Wigmore, Evidence § 2292 (McNaughton rev. 1961).
7. See also Upjohn Co. v. United States, 449 U.S. 383, 389 (1981) (purpose of attorney-client privilege is to "encourage full and frank communication between attorneys and their clients
and thereby promote broader public interests in the observance of law and administration of
justice").
8. See also Roy Robert Ray, The Law of Privilege in Texas, 12 Tex. L. Rev. 143, 147-48
(1935). See generally 1 Steven Goode, Olin Guy Wellborn III & M. Michael Sharlot, Guide to
the Texas Rules of Evidence: Civil and Criminal § 503.3 (Texas Practice 2d ed. 1993); 36 Tex.
Jur. 3d Evidence § 522 (1984); 81 Am. Jur. 2d Witnesses § 368 (1992); 8 J. Wigmore, Evidence
§ 2296; 97 C.J.S. Witnesses § 280 (1957). 
9. In Upjohn, a corporation general counsel conducted an investigation of "questionable
payments" made by the corporation's subsidiaries to foreign government officials. See 449 U.S.
at 386. Counsel sent questionnaires to managers and conducted interviews. See id. at 387. The
supreme court held that the questionnaires and counsel's notes from the interviews were protected
from disclosure by the attorney-client privilege. See id. at 396. 
10. The retention letter states:


Thank you for meeting with us yesterday. Based upon our discussions, we
would like to retain you as an independent consultant to investigate a
situation of possible document mismanagement and confidentiality/security
breaches. At the conclusion of your investigation we envision a written
report including findings and recommendations. This is to confirm that we
agreed upon an hourly rate of $125.00 for your services.


The Fourth Circuit also relied upon the testimony of one of the two Managing Directors who
signed the letter retaining Allen to conclude that Allen was retained to perform legal work. The
Managing Director stated in a sworn affidavit that "there was and is no question in my mind that
[Allen] was retained in her capacity as an attorney." In re Allen, 106 F.3d at 605.
11. See also United States v. Rowe, 96 F.3d 1294, 1297 (9th Cir. 1996) (fact-finding that
pertains to the rendition of legal advice qualifies as professional legal services); Dunn v. State
Farm & Casualty Co., 927 F.2d 869, 875 (5th Cir. 1991) (applying Mississippi law to hold that
attorney-client privilege is not waived if attorney performs investigative tasks provided tasks are
related to rendition of legal services); In re LTV Sec. Litig., 89 F.R.D. 595, 599-601 (N.D. Tex.
1981) (same with regard to Texas law).
12. See Upjohn, 449 U.S. at 390-91 ("the first step in the resolution of any legal problem
is ascertaining the factual background and sifting through the facts with an eye to the legally
relevant."). Accord Pittsburgh Corning Corp. v. Caldwell, 861 S.W.2d 423, 425 (Tex.
App.--Houston [14th Dist.] 1993, no writ) ("It is inconceivable that an attorney could give sound
legal advice on a client's case if he or she did not include an application of the law or opinion to
the specific facts of the case."); Keene Corp. v. Caldwell, 840 S.W.2d 715, 719 (Tex.
App.--Houston [14th Dist.] 1992, no writ).
13. The Attorney General argues that In re Texas Farmers Insurance Exchange, 990 S.W.2d
337, 340-41 (Tex. App.--Texarkana 1999, pet. denied), in which the Texarkana court of appeals
held that the trial court had not abused its discretion in determining that an attorney hired by an
insurance company to conduct witness interviews was acting as an investigator and not as an
attorney, is legally and factually similar to the present controversy. We disagree. There was
conflicting evidence in Farmers concerning the scope of the attorney
's responsibilities. In a 
motion to quash, the insurance company asserted that the attorney's "sole responsibility" had been
to take an Examination Under Oath. See id. at 341. A letter from the insurance company to the
attorney, however, asks the attorney to "schedule an Examination Under Oath at your earliest
convenience, and provide [Farmers] with your recommendation and summary of the statement." 
Id. (Emphasis added.) The attorney also testified in conflicting ways about the purpose of his
retention. Applying an abuse-of-discretion standard of review, the Texarkana court concluded that
the trial court had not erred by determining that the attorney had acted as an investigator alone
and allowing discovery of the "bare facts" of the investigation. See id. The facts of the present
case are distinguishable in that it is undisputed that Pou was not hired by Harlandale strictly as
an investigator; rather, she was employed to investigate Villarreal's allegations and to use her
legal training to provide Harlandale with a recommended course of action. 
14. But cf. Tex. Att'y Gen. ORD-462 (1987). In that case, a newspaper reporter sought
information gathered by lawyers hired by the University of Houston to investigate allegations
regarding the university's intercollegiate athletic program. In discussing the scope of attorney-client privilege, the Attorney General distinguished between an attorney acting as a legal adviser
and an attorney acting strictly as an investigator and opined that the privilege would apply only
to information gathered by the former. See id. The Attorney General found that the university's
lawyers had functioned in both capacities during the performance of their contractual duties and
concluded that information gathered by the lawyers while they were "conducting interviews and
otherwise compiling raw factual data" was not protected by attorney-client privilege. See id. 
Because opinions of the Attorney General are persuasive, but not controlling on the courts, we
are not bound to follow them, see Holmes v. Morales, 924 S.W.2d 920, 924 (Tex. 1996), and in
this case, we find the Fourth Circuit's reasoning in In re Allen more persuasive.
15. We note that in its appellate brief, the Attorney General agreed "[f]or purposes of this
lawsuit only" that if this Court concluded that the district court's implied finding that Pou was at
some point not acting as an attorney was erroneous, the entire report would be protected by
Government Code section 552.107(1).


family: CG Times Regular">Pittsburgh Corning Corp. v. Caldwell, 861 S.W.2d 423, 425 (Tex.
App.--Houston [14th Dist.] 1993, no writ) ("It is inconceivable that an attorney could give sound
legal advice on a client's case if he or she did not include an application of the law or opinion to
the specific facts of the case."); Keene Corp. v. Caldwell, 840 S.W.2d 715, 719 (Tex.
App.--Houston [14th Dist.] 1992, no writ).
13. The Attorney General argues that In re Texas Farmers Insurance Exchange, 990 S.W.2d
337, 340-41 (Tex. App.--Texarkana 1999, pet. denied), in which the Texarkana court of appeals
held that the trial court had not abused its discretion in determining that an attorney hired by an
insurance company to conduct witness interviews was acting as an investigator and not as an
attorney, is legally and factually similar to the present controversy. We disagree. There was
conflicting evidence in Farmers concerning the scope of the attorney
'