In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-090 CV


____________________



IN RE BAPTIST HOSPITALS OF SOUTHEAST TEXAS






Original Proceeding






O P I N I O N


 Relator, Baptist Hospitals of Southeast Texas, seeks a writ of mandamus compelling
the trial court to quash the deposition of an attorney of record and enter a protective order. 
Mandamus will issue to correct an abuse of discretion if there is no other adequate remedy
by law. See Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992)(orig. proceeding). The trial
court's clear failure to analyze or apply the law correctly will constitute an abuse of
discretion. In re E. I. DuPont de Nemours & Co., 136 S.W.3d 218, 223 (Tex. 2004) (orig.
proceeding). When a trial court orders disclosure of privileged information, the aggrieved
party lacks an adequate remedy by appeal and mandamus will lie. See Huie v. DeShazo, 922
S.W.2d 920, 928 (Tex. 1996)( orig. proceeding). We conditionally grant the petition for writ
of mandamus. 

 Baptist sued various contractors and engineering and architectural firms for
negligence, breach of contract, and breach of warranty regarding the design and construction
of the ambulatory surgical center owned by Baptist. Beaumont Surgical Affiliates, Ltd.
(BSA), the real party in interest in this mandamus proceeding, was Baptist's tenant at the
Center. Claiming Baptist breached the lease by failing to provide suitable premises, BSA
intervened in the lawsuit. BSA served a notice to take the deposition of one of Baptist's
attorneys of record in the litigation, and Baptist moved to quash the deposition. Baptist
asserted work product and attorney-client privileges. The trial court denied the motion and
ordered that BSA could proceed with the deposition. 

 The Texas civil procedure and evidence rules embody work-product and attorney-client privileges that have long been part of the common law. In re City of Georgetown, 53
S.W.3d 328, 332 (Tex. 2001). As the United States Supreme Court explained when it first
set out the work product privilege in 1947, the "[p]roper presentation of a client's case
demands that [the attorney] assemble information, sift what he considers to be the relevant
from the irrelevant facts, prepare his legal theories and plan his strategy without undue and
needless interference. That is the historical and the necessary way in which lawyers act
within the framework of our system of jurisprudence to promote justice and to protect their
clients' interests." Hickman v. Taylor, 329 U.S. 495, 511, 67 S.Ct. 385, 393, 91 L.Ed. 451
(1947). (1) Describing the potential detrimental effect if the law did not protect attorney work
product, the Court stated: 

 Were such materials open to opposing counsel on mere demand, much of what
is now put down in writing would remain unwritten. An attorney's thoughts,
heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp
practices would inevitably develop in the giving of legal advice and in the
preparation of cases for trial. The effect on the legal profession would be
demoralizing. And the interests of the clients and the cause of justice would
be poorly served. 


Id., 329 U.S. at 511. 

 In reflecting upon the importance of the work product and attorney client privileges

in the document production context, the Fourteenth Court has observed that "[i]f we were to
hold that all or part of a document containing privileged information should be disclosed
because it also included facts pertinent to the lawsuit, the purpose of the attorney-client and
work-product privileges would be annihilated." Pittsburgh Corning Corp. v. Caldwell, 861
S.W.2d 423, 425 (Tex. App.--Houston [14th Dist.] 1993) (orig. proceeding). The Court went
on to say that the "ultimate effect of such a holding would be that clients would be reluctant
to give their attorneys any factual information for fear that it would be subject to discovery.
And no attorney could even begin to prepare a case for trial, or be able to give sound advice
for lack of those facts." Id. (citation omitted). The Court described this process of parsing
"facts" from matter protected by the privileges as a "chilling intervention into the attorney-client relationship under the guise of 'looking for facts,'" which "pierces the core of a critical
privilege to carve out limited and usually superfluous morsels of discovery otherwise
obtainable. In our opinion, the cost is too great." Id. 

 Crucial to this case is that the attorney noticed for deposition is the attorney of record
in on-going litigation who has been ordered to testify concerning the subject matter of the
litigation. (2) Compelling an attorney of record involved in the litigation of the case to testify
concerning the suit's subject matter generally implicates work product concerns. In State ex
rel. Curry v. Walker, 873 S.W.2d 379, 380 (Tex. 1994), the plaintiff served a subpoena duces
tecum requiring the District Attorney or his representative to appear for a deposition upon
written questions and to produce a criminal file to be used in related civil litigation. The
Supreme Court held the work product privilege precluded the discovery, and conditionally
granted the writ of mandamus. Id. at 380-81. Quoting from its earlier decision in National
Union Fire Insurance Company v. Valdez, the Walker Court explained that "'[a]n attorney's
litigation file goes to the heart of the privileged work area guaranteed by the work product
exemption. The organization of the file, as well as the decision as to what to include in it,
necessarily reveals the attorney's thought processes concerning the prosecution or defense
of the case.'" Id. at 380 (quoting Nat'l Union Fire Ins. Co. v. Valdez, 863 S.W.2d 458, 460
(Tex. 1993)). Here, BSA's notice of deposition, containing no limitation as to subject matter
and directed at the opposing litigation attorney, is analogous to the attempts in Walker and
Valdez to discover an attorney's litigation file; the discovery goes to the heart of privileged
work area guaranteed by the work product exemption. (3) 

 The Rules of Civil Procedure protect work product from discovery. Tex. R. Civ. P.
192.5(b). Rule 192.5 (a) defines work product as follows: 

 (1) material prepared or mental impressions developed in anticipation of
litigation or for trial by or for a party or a party's representatives, including the
party's attorneys, consultants, sureties, indemnitors, insurers, employees, or
agents; or (2) a communication made in anticipation of litigation or for trial
between a party and the party's representatives or among a party's
representatives, including the party's attorneys, consultants, sureties,
indemnitors, insurers, employees, or agents.


Tex. R. Civ. P. 192.5(a). The rule distinguishes between core work product and non-core
product. Core work product, which is not discoverable, is defined as the work product of an
attorney, or his representative, that contains the attorney's mental impressions, opinions,
conclusions, or legal theories. Tex. R. Civ. P. 192.5(b)(1). Work product that does not fall
within "core work product" may be discoverable, but "only upon a showing that the party
seeking discovery has substantial need of the materials in the preparation of the party's case
and that the party is unable without undue hardship to obtain the substantial equivalent of the
material by other means." Tex. R. Civ. P. 192.5(b)(2). If a court orders the discovery of
work product pursuant to Rule 192.5(b)(2), the court "must -- insofar as possible -- protect
against disclosure of the mental impressions, opinions, conclusion, or legal theories not
otherwise discoverable." Tex. R. Civ. P. 192.5(b)(4). (4) 

 A party whose deposition has been noticed may seek protection through assertion of
privileges and offer evidence supporting the privilege asserted. This party has the burden of
proof. See generally In re E. I. DuPont de Nemours & Co., 136 S.W.3d at 223. Initially, the
party must make a prima facie showing of privilege, which requires only the "'minimum
quantum of evidence necessary to support a rational inference that the allegation of fact is
true.'" Id. at 223 (quoting Texas Tech Univ. Health Sciences Ctr. v. Apodaca, 876 S.W.2d
402, 407 (Tex. App.--El Paso 1994, writ denied)). In the work product context, this means
the prima facie case must show the discovery sought is work product created in anticipation
of litigation or for trial. Tex. R. Civ. P. 192.5(a).

 To support its privilege claims, Baptist submitted affidavits. Phillip G. Sivils, director
of claims/insurance/legal services at Baptist Hospitals from June 2000 through January 2003,
stated by affidavit as follows:

 2. . . . I retained Charles W. Goehringer, Jr. of Germer Gertz L.L.P. to
represent Baptist for legal consultation and representation concerning the
matters which have ultimately become the basis for this suit. I was concerned
about possible litigation at the time that I retained [him].


 3. I retained the services of Mr. Goehringer and his firm in approximately
2001.


 4. The purpose was to investigate, prosecute and defend all claims relating to
the construction and design of the ambulatory surgery center. . . . I fully
intended Mr. Goehringer to investigate all legal issues relating to the
construction and design of the ASC and determine what design and
construction defects, if any, that may have existed, in anticipation of and in
preparation for litigation. Mr. Goehringer's duties did not, nor did they ever,
during my employment at Baptist, include any decisions regarding remediation
and repair efforts. Any and all such decisions were made by Baptist, its
employees and consultants.


 5. I retained Mr. Goehringer to investigate the circumstances surrounding any
issues relating to the ASC in question. Specifically, I retained him for his legal
knowledge, skills and ability to monitor and investigate potential and actual
claims for legal analysis. The sole purpose for my retention of Mr. Goehringer
in the above-referenced matter was for him to investigate, monitor, prosecute
and defend legal claims for Baptist relating to the ASC.


 6. Mr. Goehringer's background as an engineer made him uniquely qualified
to effectuate legal representation of Baptist in this matter. I did not hire him
to perform or supervise any engineering related tasks.


 7. Mr. Goehringer was not a project manager for Baptist for any property,
issue, or enterprise. He only served as Baptist's legal counsel and performed
necessary legal services and investigations on Baptist's behalf. 


Ms. Julia Hyett, the Baptist employee who succeeded Sivils, attested to similar facts
regarding Goehringer and his representation of Baptist Hospital. Neither Hyett nor Sivils
dispute that Goehringer was present for numerous inspections of the surgery center. 

 BSA presented affidavits indicating Goehringer was involved in observing,
investigating, monitoring, reviewing, and evaluating the technical problems at the surgery
center; that he communicated numerous times with BSA representatives; that he attended
meetings where construction problems were discussed; that he was involved in testing
performed at the Center; that he represented that Baptist would compensate BSA's Darlene
Vega for a weekend's work and pay the cost of BSA's hygienist's mold inspection; and that
he was the "point of contact" person for Baptist with BSA. With this conduct, BSA argues
Goehringer's work was not that of an attorney but that of an "engineer, construction
manager and relationship manager." BSA contends Goehringer's work in this area was not
work product, he was not acting as an attorney, and he became a fact witness subject to being
deposed. 

 BSA relies on In re Texas Farmers Insurance Exchange, 990 S.W.2d 337 (Tex. App.--Texarkana 1999, orig. proceeding), mand. denied, 12 S.W.3d 807 (Tex. 2000), to argue that
Goehringer was acting, not as an attorney, but as a fact witness. (5) Farmers Insurance hired
an attorney to take examinations under oath from the insureds after their home was destroyed
by fire. Farmers, 990 S.W.2d at 339. When the fire investigator reported that no accidental
ignition source could be identified as the cause of the fire, Farmers denied the claim. Id. The
insureds sued Farmers and sought the deposition of the attorney. Id. In considering Farmers'
attorney-client privilege claim, the Court found the privilege did not apply because, until the
date the insureds sued Farmers, the attorney had acted as an investigator conducting a routine
investigation, not as an attorney. Id. at 340-41. As to the work product exemption, the Court
further found the fire investigator's conclusion -- that no accidental ignition source for the
fire could be identified -- "would not have led a reasonable person to anticipate litigation." 
Id. at 342. The Court also concluded the trial court was incorrect in finding the trigger date
for anticipation of suit to be the date the suit was filed rather than the date the claim was
denied. Id. at 341, 343. 

 While we do not mean to suggest agreement with the language and holding in
Farmers, (6) the instant case is distinguishable. In Farmers, the Court determined the attorney
was hired and functioned as an investigator until the date Farmers denied the claim and that
litigation was not anticipated until the claim was denied. Unlike the attorney in Farmers,
Goehringer is the attorney of record in on-going litigation. He was retained to investigate,
monitor, and evaluate problems relating to the surgical center's design and construction and
to represent Baptist in all phases of the controversy, including anticipated litigation.

 Every attorney of record in a case being litigated, or in a case where litigation is
anticipated, obtains "factual, relevant information." Performing the function of a lawyer 
does not preclude a litigation attorney from observing, investigating, monitoring, and
evaluating the facts surrounding the matter in controversy. The evidence does not show
Goehringer was a fact witness divorced from the litigation. His work was reasonably related
to and in furtherance of the prosecution of Baptist's case against the defendants, and also
related to mitigating its damages regarding BSA and to defending against BSA's causes of
action. We conclude his activities fall within the Rule 192.5 work product definition. 

 BSA maintains it seeks information that Goehringer did not acquire in anticipation of
litigation and argues that Baptist was not anticipating litigation against BSA when Baptist
filed suit against the contractors and other defendants in February 2002. (7) BSA did not
intervene in the suit until December 2003. However, the record establishes that in an April
2002 letter from BSA to Baptist, BSA expressly threatened suit against Baptist over the same
matters addressed in Baptist's suit against the contractors. Based on that letter and the fact
that Baptist had already filed suit regarding defects in the premises leased by BSA, a
reasonable person would have concluded there was a substantial chance litigation with BSA
would occur. More particularly, Baptist, the party resisting discovery, could have believed
in good faith there was a substantial chance litigation would ensue and investigated,
monitored, evaluated, and attempted to mitigate damages in anticipation of suit. The work
product privilege is of continuing duration and not applicable solely to the lawsuit in which
it arises. See Owens-Corning Corp. Fiberglas v. Caldwell, 818 S.W.2d 749, 751-52 (Tex.
1991). Thus, the work product developed in anticipation of, and during, Baptist's litigation
against the contractors extends to BSA's intervention against Baptist in the same suit.
Moreover, Baptist's evidence established the prima-facie work product privilege.

 BSA argues that even if Baptist did reasonably anticipate litigation, Goehringer was
under an ethical obligation to inform BSA representatives, whom he knew to be represented 
by counsel, that he could not speak with them about the facts of the case. Tex. Disciplinary
R. Prof'l Conduct 4.02(a), reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G, app. A
(Vernon 2005)(Tex. State Bar R. art. X § 9). Because Goehringer allegedly failed to do
so, BSA argues Baptist cannot cloak itself in work product privilege. The preamble to the
rules of professional conduct states, "[T]hese rules are not designed to be standards for
procedural decisions[,]" and they "are not intended to govern or affect judicial application
of either the attorney-client or work product privilege." Tex. Disciplinary R. Prof'l
Conduct preamble ¶¶ 15, 16. We note there is no indication in the record that BSA objected
to or did not consent to the communications with Goehringer. Given the circumstances, we
decline to apply the rule to estop the assertion of the work product privilege in this case.

 In view of the work product privilege, BSA had the burden to demonstrate the
substantial need and undue hardship requirements for discovery of non-core work product. 
See Tex. R. Civ. P. 192.5(b)(2). While BSA submitted affidavits that indicated Goehringer
was intimately involved in remediation efforts and was the only Baptist representative with
whom BSA dealt on all operational, leasing, and construction issues, there is also evidence 
BSA routinely dealt with numerous Baptist employees, including Phillip Sivils, Julie Hyett, 
Wilson Weber, David Parmer, David Lognion, and Randy Tippett, as well as consultants
William Neild and Larry Gray, and various contractors on those issues. Further, a Baptist
employee stated by affidavit, "Mold remediation plans were prepared by various consultants
and contractors retained by Baptist and not by Mr. Goehringer. All air testing for the Surgery
Center was directed and coordinated by industrial hygienist, Kyle Dotson, as well as other
consultants retained by Baptist, and not by Mr. Goehringer." If, as BSA argues, it had
substantial need for this information, there were Baptist employees and numerous contractors
and consultants who could be deposed. Although BSA purportedly deposed Baptist
personnel Julie Hyett and David Parmer, BSA apparently did not, in this record, ask any
questions about the mold testing, the construction, leasing, and operational aspects of the
Center, or payment of Vega, a BSA employee, or BSA's industrial hygienist's expenses --
areas about which BSA says it wants information. Baptist also states BSA has not deposed
Baptist's architectural expert or any of the other experts and contractors who actually
performed the work. BSA does not dispute this claim. Thus, BSA has failed to show it
cannot acquire the information it seeks or its substantial equivalent through other sources and
less intrusive means. 

 Generally, an attorney of record in litigation is an advocate, not a fact witness, in the
litigation process. As with compelling production of opposing counsel's litigation file,
compelling a deposition of the opposing party's attorney of record concerning the subject
matter of the litigation is inappropriate under most circumstances. Calling opposing counsel
of record as a witness seriously disrupts the counsel's functioning as an advocate and may
create a false impression that the advocate was improperly involved in the underlying issues
in the litigation. Restatement (Third) of the Law Governing Lawyers § 108 (4) cmt.
l (2000). Normally, if an issue of disqualification is to be raised, it should be done in a
straightforward manner by a motion to disqualify. See generally In re Sanders, 153 S.W.3d
54 (Tex. 2004)(affirming trial court's denial of motion to disqualify). A motion to disqualify
has not been filed here. 

 Although the discovery rules provide access to material information, the rules also
provide effective means of limiting discovery to preserve litigation as a viable dispute
resolution mechanism. See generally In re Sears, Roebuck & Co., 146 S.W.3d 328, 331
(Tex. App.--Beaumont 2004, orig. proceeding). Rule 192.4 authorizes the court to limit
discovery methods permitted by the rules if the discovery is obtainable from some other
source that is more convenient, less burdensome, or less expensive, or if the burden or
expense of the proposed discovery outweighs its likely benefit. Tex. R. Civ. P. 192.4 (a),(b). 
Generally, even when discovery of non-core work product is permitted because of substantial 
need and undue hardship under Rule 192.5 (b)(2), a trial court should not order a deposition
of an attorney of record on the subject matter of the litigation without requiring a showing
that less intrusive discovery methods are unavailable to obtain the information sought. See
generally In re ExxonMobil Corp., 97 S.W.3d 353, 358 (Tex. App.--Houston [14th Dist.]
2003, orig. proceeding) (Factual information may be obtained by means other than requiring
production of privileged documents.). Written discovery requests may be less intrusive
because they do not require an attorney to make an immediate decision on whether a question
involves work product or attorney-client privilege, and may not distract the attorney or
involve the attorney as personally as a deposition. If, as a last resort, the advocate's oral
deposition is to be ordered, the area of questions permitted should be specified and a
protective order entered, to protect against the disclosure of core work product and other
privileged information. See Tex. R. Civ. P. 192.5(b)(4).

 Here, BSA has not shown that it has substantial need of the facts known by
Goehringer for the preparation of its case and that it is unable without undue hardship to
obtain the substantial equivalent of the material by other means. The order compelling the
deposition of the attorney of record does not limit its scope in any way or otherwise protect
against disclosure of work product. Under these circumstances, the trial court abused its
discretion in ordering the deposition of trial counsel. 

 We conditionally grant mandamus relief and will issue the writ only if the trial court
does not vacate its order of February 23, 2005. 

 PETITION CONDITIONALLY GRANTED.

 PER CURIAM

Submitted on March 23, 2005

Opinion Delivered August 11, 2005


Before McKeithen, C.J., Gaultney, and Kreger, JJ.
1. The United State Supreme Court characterized the discovery sought in Hickman as
"an attempt to secure the production of written statements and mental impressions contained
in the files and the mind of the attorney . . . without any showing of necessity or any
indication or claim that denial of such production would unduly prejudice the preparation of
petitioner's case or cause him any hardship or injustice." Hickman, 329 U.S. at 509.
2. Cases involving different circumstances include Huie v. DeShazo, 922 S.W.2d 920
(Tex. 1996)(deposition of attorney serving as lawyer for trustee of trust); West v. Solito, 563
S.W.2d 240, 242 (Tex. 1978)(Supreme Court's suggestion in dicta of a method of taking
depositions of attorneys not in the litigation); Borden, Inc. v. Valdez, 773 S.W.2d 718 (Tex.
App.-Corpus Christi 1989, orig. proceeding)(deposition of in-house counsel); Pondrum v.
Gray, 298 S.W.409 (Tex. Comm'n App. 1927, holding approved)(testimony of attorney who
prepared agreement accompanying deed).
3. This opinion centers upon the work-product exemption raised by Baptist, but similar
concerns may arise in the attorney-client privilege context when a party notices the
deposition of the opposing attorney in the litigation.
4. The work product privilege includes the following exceptions: information
discoverable under Rule 192.3 concerning experts, trial witnesses, witness statements, and
contentions; certain trial exhibits; the name, address, and telephone number of any potential
party or any person with knowledge of relevant facts; any photo or electronic image of
underlying facts; and any work product created under circumstances within an exception to
the attorney-client privilege in Rule 503(d) of the Rules of Evidence. Tex. R. Civ. P.
192.5(c). 
5. Other cases, distinguishable from this case, have allowed the deposition of an
attorney of record when he injects himself into the case as a witness by filing an affidavit on
contested facts, or when he is alleged to have conspired to obtain a default judgment. See
Smith, Wright & Weed, P.C. v. Stone, 818 S.W.2d 926 (Tex. App.--Houston [14th Dist. 1991,
orig. proceeding) (conspiracy allegation); Lummus v. Dean, 750 S.W.2d 312 (Tex. App.--Beaumont 1988, orig. proceeding) (attorney's affidavit stated he was attorney of record, he
was knowledgeable in the review and evaluation of injuries, and plaintiff's medical charges
were not made necessary by the auto accident); Hilliard v. Heard, 666 S.W.2d 584 (Tex.
App.--Houston [1st Dist.] 1984, orig. proceeding) (defense counsel filed controverting
affidavit in response to plaintiff's affidavit attesting to reasonableness of costs and necessity
of goods and services sold to plaintiff.).
6. Farmers involved an attorney retained "to obtain facts by taking the [insureds']
examinations under oath" and to "give a legal opinion to Farmers regarding potential
litigation issues." Farmers, 990 S.W.2d at 341. The Court found the attorney was acting as
an investigator, not an attorney. However, in Harlandale Independent School District v.
Cornyn, the school district retained an attorney to investigate an alleged sexual assault on a
school security guard and to deliver a legal analysis. Harlandale Indep. Sch. Dist. v. Cornyn,
25 S.W.3d 328, 333 (Tex. App.--Austin 2002, pet. denied) (attorney-client privilege). The
Court held the attorney conducted the investigation in her capacity as an attorney, and the
material was privileged. Id. at 334-335. Further, the Court indicated that the requestor could
seek the information from the same sources that were interviewed by the attorney. Id. at 335. 
7. The Supreme Court has employed a two-part test for anticipation of
litigation. Documents, communications, or mental impressions are prepared in
anticipation of litigation if (1) a reasonable person would have concluded from the
totality of the circumstances that there was a substantial chance that litigation
would ensue (objective standard); and (2) the party resisting discovery believed
in good faith that there was a substantial chance that litigation would ensue and
prepared the material, conducted the investigation, developed the mental
impression, or communicated the information in anticipation of such litigation
(subjective standard). See National Tank Co. v. Brotherton, 851 S.W.2d 193, 204-07 (Tex. 1993); and Tex. R. Civ. P. 192.5(b).