In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-06-298 CV


____________________



IN RE EXXON CORPORATION, EXXONMOBIL OIL CORPORATION,


INDIVIDUALLY f/k/a MOBIL OIL CORPORATION AND a/k/a MOBIL


CHEMICAL COMPANY, A DIVISION OF EXXONMOBIL OIL


CORPORATION, MOBIL CHEMICAL COMPANY, INC., INDIVIDUALLY


AND f/k/a MOBIL CHEMICAL CORPORATION







Original Proceeding






OPINION


 In this mandamus proceeding, we must decide whether the trial court may compel a
party to present a deponent to testify as to the efforts taken to search for documents requested
in requests for production that have been previously responded to by the relators. The real
parties in interest produced no concrete evidence of discovery abuse in this case and failed
to justify an investigation into the relators' discovery compliance. Because the trial court's
order provides the real party in interest with a license to engage in a fishing expedition
regarding matters either privileged or not relevant to the subject matter of the pending action,
we conditionally grant mandamus relief.

 Exxon Corporation, ExxonMobil Oil Corporation, individually f/k/a Mobil Oil
Corporation and a/k/a Mobil Chemical Company, a Division of ExxonMobil Oil Corporation,
Mobil Chemical Company, Inc., individually and f/k/a Mobil Chemical Corporation, (1) are
defendants in consolidated suits filed by the real parties in interest, Herbert Wilkinson, Peggy
Hebert, (2) and Ann Stubbs, Individually and as Representative of the Estate of Ben Stubbs. (3) 
The plaintiffs allege Herbert Wilkinson and Ben Stubbs developed cancer as a result of
benzene exposure that occurred while working intermittently as contract employees on
Exxon's premises. In the three years the suits have been on file, the plaintiffs have served
a series of requests for production of documents, many of them unlimited in time and
location. The relators objected to the scope, burdensomeness, and lack of relevance of the
requests, but provided over 25,000 pages of documents and made its 100,000 document
Exxon-Baytown Industrial Hygiene File Room ("IH file room") available to the plaintiffs. 
The plaintiffs filed a motion to compel Exxon to comply fully with the requests.

 Wilkinson noticed the deposition of "the person or persons most knowledgeable
regarding" documents previously requested in three sets of requests for production, as to: (1)
existence; (2) electronic creation, duplication and storage; (3) document retention and
destruction policies; (4) location; (5) organization, indexing and filing; (6) method of search;
(7) completeness; and (8) authenticity. Exxon moved to quash the deposition. At the
hearing, Exxon offered to tender an industrial hygienist for deposition on documentation. 
On December 14, 2005, the trial court denied Exxon's motion to quash the deposition with
the following notation: "The deposition will be for a records custodian only. There will be
no interrogation other than as it relates to records."

 The plaintiffs deposed the records custodian for the industrial hygiene file room. 
According to the deponent, records of any hazards exposed to employees and matters related 
to the industrial hygiene group are documented in the IH file room. The file room does not 
contain the records of the medical, safety, and environmental departments, although some
documents from those departments are contained in the room. The deponent testified, in
response to questions about various requests for production, that she was unaware of the
existence of any responsive documents other than those contained in the file room. She did
not know where Exxon kept its epidemiological studies. She knew Exxon kept a file on
benzene in the IH file room, but she did not know if it included a report on the toxicological
effects of benzene. She testified that all the industrial hygiene groups share their
information, but she could not personally testify as to what particular documents the medical
or industrial hygiene group at Exxon corporate might have in their possession. She had not
seen any work permits for Wilkinson and could not testify as to whether there were any in
Exxon's possession. Generally speaking, the deponent could testify about the type of
documents in the file room, but could not discuss their contents, and she could not within her
knowledge state that no other departments of Exxon possessed responsive documents not
contained in the IH file room over which she had charge.

 Wilkinson and Stubbs noticed another deposition of a person to testify fully as to the
existence of documents previously requested in six sets of requests for production, as to: (1)
existence; (2) electronic creation, duplication and storage; (3) document retention and
destruction policies; (4) location; (5) organization, indexing and filing; (6) method of search;
(7) completeness; and (8) authenticity. Exxon objected on the grounds that the requests were
"overly broad, unduly burdensome, unlimited in time and scope, and not reasonably
calculated to lead to the discovery of admissible evidence." Exxon further objected on the
ground that the plaintiff's deposition topics sought to invade the attorney-client privilege and
the work product doctrines. Exxon also objected that the notice identified topics that
exceeded the scope permitted by the trial court's order. Wilkinson and Stubbs presented
additional requests for production of documents the day before the scheduled deposition. 

 Exxon produced an industrial hygienist for deposition. From 1989 to 1997, this
witness generated documents and oversaw and supervised individuals who generated
documents filed in the IH file room. The documents discussed in the deposition were usually
referred to by Bates stamp and appear to have been produced to the plaintiffs. The deposition
was not limited to a discussion of documents or document production and it was several
hours into the deposition before the deponent was asked if she could provide testimony
regarding the method of search for the responsive documents. The deponent replied that the
only information she could provide was what Exxon's attorneys provided to her. When
asked about epidemiological studies, the deponent stated that the studies were not secret
documents and could be found in several places, including the Baytown IH file room. She
identified by name the epidemiologists and industrial hygienists working at ExxonMobil
Biomedical Sciences group in Annandale, New Jersey, but she did not personally speak with
anyone in Annandale about the requests for production of documents and could not say if
they had been contacted about the requests. She also identified the librarian at the Annandale
facility. As for the completeness of the responsive documents, she testified that the people
who retrieved the documents went where she would have gone to look for the documents. (4) 
She also expressed concerns about a document compiled from a database. The deponent was
not sure if the search parameters had captured all the relevant data because she did not see
some of the units she expected to see for a report concerning both Wilkinson and Stubbs. 
Generally speaking, this witness possessed extensive knowledge of Exxon's efforts in
monitoring and protecting workers at its facilities, and could explain the documents in the
IH file room, but could not tell the plaintiffs that they possessed all possible responsive
documents because she had not personally participated in the search.

 Next, Stubbs and Wilkerson filed a motion to compel compliance with the trial court's
orders regarding discovery and requested sanctions be imposed on Exxon for having
produced witnesses that had no knowledge of the method of Exxon's search for documents
responsive to the requests for production. In its response, Exxon stated that "In-house and
outside counsel compiled responsive documents and to date have produced well over 100,000
responsive documents." Exxon took the position that the plaintiffs have known "that no one
individual outside of the legal team compiled responsive documents. . . ." Exxon re-urged
its previous objections to the requests for production. The trial court addressed the matter
in a hearing. During the hearing, the plaintiffs' lawyers presented the issue as follows: 

 There is some representative on behalf of Exxon who is knowledgeable about
what documents are in that room, knows the efforts that were made to gather
those documents, is familiar with our Requests for Production and we frankly
believe it's a lawyer and Exxon wants to protect the lawyer from being
deposed. It's that simple. If Exxon wants to make a lawyer its custodian of
records and to comply with the Requests for Production of documents,
sobeit. . . . 


 . . . .


 . . . The [industrial hygiene file] room is not the universe of Exxon, the multi-national, giant company's documents. We want to know about the documents
that aren't inside of that room. We've already seen the documents inside that
room. They opened the door for - - for our lawyers. This really goes to all the
other places and all the things that all these other companies did. When - -
when the Court ordered the other companies, they said, "Here's a lawyer. 
Here's somebody from our legal department. Here's the folks who actually
put their hands on the documents, the folks who actually read the requests." 
And we just would ask that Exxon play by the same rules, Your Honor. 


 Counsel for Exxon explained that Exxon and plaintiffs' previous counsel worked
cooperatively to determine which documents needed to be produced, that Exxon's in-house
and the outside counsel compiled the documents, and that plaintiffs' previous counsel were
the ones who searched for responsive documents and not any records custodian for Exxon. 
Counsel for Wilkinson and Stubbs replied that if no one at Exxon had performed the search,
they needed to, and asked the trial court to order Exxon to produce a responsive person who
had actually done a search "at all the places that documents are out there that are responsive
to this request." 

 On June 8, 2006, the trial court granted the plaintiffs' motion to compel compliance
with the court order of December 14, 2005, ordered Exxon to produce a deponent fully
responsive to Wilkinson's November 23, 2005, notice of deposition and a deponent
responsive to the same or a substantially similar type of deposition notice for Stubbs. The
court ordered that the deposition take place at the Dallas offices of the plaintiffs' lawyers,
and ordered Exxon to pay the cost of the deposition. The order directed the plaintiffs to
narrow the number of requests to any 30 from 200, and the plaintiffs communicated their
selections by letter dated June 26, 2006. Exxon filed this petition for writ of mandamus and
we stayed the deposition pending our consideration of the petition.

 Exxon contends the plaintiffs' overbroad discovery requests constitute an improper
fishing expedition. Because it complied with the order of December 14, 2005, Exxon argues,
its compliance may not be further compelled by the trial court's order of June 8, 2006. 
Exxon contends it exercised exhaustive efforts to produce a reasonable breadth of discovery,
so a third company representative deposition is neither beneficial nor appropriate. According
to Exxon, the witnesses previously produced were prepared to discuss the proper subjects of
the deposition notices, that is, the location, authenticity, and existence of documents
reasonably responsive to the discovery requests. Sworn oral responses to requests for
production of documents are not contemplated by the Rules of Civil Procedure, Exxon
argues, and requiring a corporate representative to testify about the method of search for the
responsive documents necessarily invades protected attorney-client and work product
privileges.

 Wilkinson and Stubbs insist the deposition cannot be characterized as a fishing
expedition because they are not seeking further document production at the time of the
deposition. Information as to whether Exxon performed a diligent search cannot encompass
work product, they contend, because the documents are not created in preparation for
litigation. Because they seek only to obtain information regarding the diligent search
performed by a person whose duties at Exxon would make them familiar with the existence,
location, and creation of documents relevant to such matters as health and safety issues
concerning benzene, their questions will not venture into information prepared for litigation. 
Wilkinson and Stubbs note that they directed their discovery requests to Exxon, not its
attorneys. Any inquiry into attorney-client privilege is premature, they contend, because
information with respect to Exxon's production of relevant, non-privileged documents do not
involve attorney-client confidential communications. If the industrial hygienist had reviewed
the requests for production prior to her deposition, they argue, she would have been capable
of responding to their questions.

 Wilkinson and Stubbs contend the specific discovery they seek is explicitly authorized
by Rules 192.3(b) and 196.2(b)(4) of the Rules of Civil Procedure. According to the real
parties in interest, documents essential to their claims that Exxon exposed them to unsafe
levels of benzene reside outside the industrial hygiene file room. The purpose of the
deposition, they contend, is to determine whether anyone from Exxon performed a "diligent
search" for documents located at ExxonMobil Biosciences in New Jersey. Wilkinson and
Stubbs refer to the librarian at Annandale, New Jersey, and to a records custodian at a facility
on Bell Street in Houston, and suggest these persons would be able to speak knowledgeably
as to the existence of benzene-related documents in their collections.

 In general, a party may obtain discovery regarding any non-privileged matter relevant
to the subject matter of the pending action. Tex. R. Civ. P. 192.3(a). "A party may obtain
discovery of the existence, description, nature, custody, condition, location, and contents of
documents . . . that constitute or contain matters relevant to the subject matter of the action." 
Tex. R. Civ. P. 192.3(b). Although the scope of discovery is generally within the trial court's
discretion, the trial court abuses its discretion by ordering discovery that exceeds that
permitted by the rules of procedure. See Texaco, Inc. v. Sanderson, 898 S.W.2d 813, 815
(Tex. 1995). To be valid, a request for production must show a reasonable expectation of
obtaining information that will aid the dispute's resolution. In re CSX Corp., 124 S.W.3d
149, 152 (Tex. 2003) (citing In re Am. Optical Corp., 988 S.W.2d 711, 713 (Tex. 1998)). 
Therefore, discovery requests must be "reasonably tailored" to include only relevant matters. 
Id. "Discovery orders requiring document production from an unreasonably long time period
or from distant and unrelated locales are impermissibly overbroad." In re CSX Corp., 124
S.W.3d at 152. "A central consideration in determining overbreadth is whether the request
could have been more narrowly tailored to avoid including tenuous information and still
obtain the necessary, pertinent information." Id. at 153. Several of the requests for
production in this case are strikingly similar to the request for all documents written by a
former corporate safety director "'that concern safety, toxicology, and industrial hygiene,
epidemiology, fire protection and training'" held to be overbroad in another benzene
exposure case decided over a decade ago. Texaco, 898 S.W.2d at 814. (5)

 Although it is evident that there was no attempt made to narrowly tailor the discovery
in this case, the issue presently before us is not whether the plaintiffs' requests for production
are unduly burdensome and overly broad. The order being challenged compels submission
to a deposition, not the production of documents. The time and scope of the requests matter
only because the overbroad requests begat an overbroad response. Having been required to
produce every document it possessed relating to benzene, Exxon's response was to object but
to also offer a compromise: that the Baytown industrial hygiene file room would be available
for inspection and document copying. Wilkinson and Stubbs subsequently took the
depositions of the person who could tell them what documents are contained in the room and
the person who could tell them what documents have been generated regarding benzene
exposure at the facility in question. Apparently, no longer satisfied with that solution now
that they have twice taken full advantage of access to the IH file room, the plaintiffs seek to
depose an Exxon representative for the purpose of inquiring specifically into the process by
which Exxon's representative responded to the requests for production. This subject
necessarily and almost exclusively concerns the "mental impressions developed in
anticipation of litigation or for trial by or for a party or a party's representatives" and consists
of the "attorney's representative's mental impressions, opinions, conclusions, or legal
theories" subject to protection as work product and core work product. See Tex. R. Civ. P.
192.5(a)(1), (b)(1).

 It cannot reasonably be argued in this Court that the anticipated deponent is not one
of Exxon's attorneys. During the June hearing, plaintiffs' counsel informed the trial
court that he suspected the knowledgeable representative was indeed an Exxon lawyer and
Exxon confirmed with the trial court that counsel responded to the requests for production. 
"Compelling an attorney of record involved in the litigation of the case to testify concerning
the suit's subject matter generally implicates work product concerns" and "is inappropriate
under most circumstances." In re Baptist Hosps. of Se. Tex., 172 S.W.3d 136, 140, 145 (Tex.
App.--Beaumont 2005, orig. proceeding). Baptist Hospitals concerned counsel of record
who possessed relevant factual information about the case. Id. at 143. This case may involve
either counsel of record or in-house counsel not acting as counsel of record in this litigation,
and in that sense is distinguishable from Baptist Hospitals. In that case, however, the
potential existed for the demonstration of substantial need for non-core work product. Id. at
145. In this case, the discovery is being conducted into how Exxon conducted this litigation,
as opposed to Exxon's research on benzene. This inquiry is designed to inquire into mental
processes of counsel and is not reasonably calculated to lead to the discovery of admissible
evidence. In that sense, there is a greater need for protection in this case than was present
in Baptist Hospitals.

 The record does not support a claim that relevant documents reside solely outside the
industrial hygiene file room. To support their claim that Exxon failed to provide all
responsive documents, the real parties in interest refer to another case in which their counsel
deposed the same industrial hygienist they deposed in this case. They do not show that the
deposition was presented to the trial court, nor does the cited reference establish that Exxon
failed to produce any documents relating to the Wilkinson and Stubbs cases. The industrial
hygienist merely stated that if she were to search for documents with respect to work permits
issued to Mundy Construction Company, she would start at the safety department at
Baytown.

 During the December 2005 hearing, counsel for the plaintiffs referred to "the Esso
toxigrams" that "talk directly to the hazards of exposure to benzene on the blood-forming
organs." Counsel suggested the documents were responsive to at least two of the requests
for production but were not produced. Counsel explained to the court that they needed to ask
the person at Exxon who looked for the documents to see why the person did not go to where
the documents are kept and get them for the plaintiff. Counsel argued the plaintiffs were
seeking a statement under oath that all responsive documents had been produced. Counsel
for Exxon informed the court that the Esso toxigram was part of a document, called the Rawl
report, that had been sent to counsel for the plaintiffs some time earlier. During the May
2006 deposition of the industrial hygienist, plaintiff's counsel mentioned that he had with
him a copy of "Esso's 1958 Toxigram." Counsel read from the document and asked the
hygienist questions about it. If Exxon had not provided the document before the first
hearing, it is clear that the plaintiffs have it now. Wilkinson and Stubbs failed to establish
any document withholding or other discovery abuse by Exxon.

 Wilkinson and Stubbs obtained the trial court's permission to depose witnesses purely
for the purpose of exploring Exxon's efforts in responding to the discovery requests, without
first establishing necessity for the inquiry. This is precisely the sort of fishing expedition
forbidden by the Texas Supreme Court. "A trial court's ruling that requires production
beyond what our procedural rules permit is an abuse of discretion." In re Dana Corp., 138
S.W.3d 298, 301 (Tex. 2004). "If an appellate court cannot remedy a trial court's discovery
error, then an adequate appellate remedy does not exist." Id.

 We hold the trial court abused its discretion and that there is no adequate remedy at
law to remedy the error. Accordingly, we conditionally grant mandamus relief and direct the
trial court to vacate its orders requiring Exxon Corporation, ExxonMobil Oil Corporation,
or Mobil Chemical Company, Inc., to present a deponent responsive to Plaintiffs' November
23, 2005, deposition notice, or any substantially similar notice by Herbert Wilkinson, Peggy
Hebert, or Ann Stubbs, Individually and as Representative of the Estate of Ben Stubbs. We
are confident the trial court will vacate its previous orders and that any further discovery
orders issued in the case will be consistent with this Opinion. The writ shall issue only if the
trial court fails to act promptly in accord with this Opinion.

 WRIT CONDITIONALLY GRANTED.


 PER CURIAM


Submitted on July 21, 2006

Opinion Delivered October 12, 2006


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. For convenience, this opinion collectively refers to Exxon Corporation,
ExxonMobil Oil Corporation, and Mobil Chemical Company, Inc., as "Exxon" as though
the corporations were a single party. 
2. In this opinion, Wilkinson and Hebert are collectively referred to as "Wilkinson." 
3. Only Wilkinson presented a deposition notice, but the trial court expanded the
order to include Stubbs. The order consolidating the Wilkinson and Stubbs suits is the
subject of a separate mandamus proceeding styled In re Shell Oil Company, No. 09-06-195
CV (Tex. App.--Beaumont Sept. 14, 2006). 
4. In the course of the deposition, Exxon's counsel noted that counsel for the plaintiffs
had access to, but had not taken a copy of a monitoring document on Stubbs.
5. Considering that the trial court obviously has not to this point considered Exxon's
objections to the individual requests for production, we avoid discussing whether any
particular request is overbroad or unduly burdensome. See Am. Optical Corp., 988
S.W.2d 713-14.