**In re JEFFERSON COUNTY APPRAISAL DISTRICT.**

No. 09–10–00074–CV.

Court of Appeals of Texas, Beaumont.

Submitted April 8, 2010.

Decided June 10, 2010.

Amanda G. Taylor, Amy Keith, Robert Summers, Hohmann, Taube & Summers, Austin, Robert Q. Keith, Keith & Weber, Cypress Mill, for relator.

Edward Kliewer, III, William T. Sullivan, Rosemarie Kanusky, Fulbright & Jaworski L.L.P., San Antonio, M.C. Carrington, Patricia Chamblin, Mehaffy Weber, Beaumont, Steven A. Kuntz, Jay M. Chadha, Fulbright & Jaworski L.L.P., Houston, for real parties in interest.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

PER CURIAM.

Jefferson County Appraisal District ("JCAD") seeks a writ of mandamus compelling the trial court to vacate orders granting Total Petrochemicals, USA, Inc., Total Par L.P., Total Par General Partner, L.L.C., and Total Par Limited Partner, L.L.C.'s (collectively "Total") motion to compel discovery related to the identity of JCAD's jury consultant, and denying JCAD's Motion to Reconsider and Motion for Protective Order on its assertion of discovery objections and privileges. JCAD further asks this Court to enter a modified order, sustaining each of JCAD's assertions of privilege and objections to Total's interrogatories, and reversing the trial court's order directing JCAD to supplement its discovery responses and to "conclude that JCAD is not required to produce any of the information sought by Total, and that Total is not entitled to depose JCAD's jury consultant." Because

the information Total seeks to discover is privileged or outside the scope of discovery, we conditionally grant the writ of mandamus.

## BACKGROUND

Total filed the underlying lawsuit challenging JCAD's tax appraisal for Total's refinery in Port Arthur, Texas. While deposing Mark Brumbaugh, one of JCAD's designated testifying experts, Total learned that counsel for JCAD had conducted a mock trial utilizing the services of a trial/jury consultant. Brumbaugh was questioned extensively during his deposition regarding the mock trial. Among other things, Total questioned Brumbaugh regarding who was present at the mock trial, the number of jurors who participated, the length of the mock trial, the conclusions or opinions expressed by the jurors, how the case was presented to the jurors, where the mock trial was held, whether Brumbaugh or other witnesses testified in the mock trial, and the identity of the consulting company that conducted the mock trial. Brumbaugh answered each of the questions without objection by counsel for JCAD. Brumbaugh provided details about the arguments presented, as well as his perception of the jurors' reaction to those arguments.

Brumbaugh's billing records showed that several days later he spent seven hours doing "mock trial follow-up." Brumbaugh explained that he had several telephone conversations with JCAD's lawyers reviewing the mock trial. Total also questioned Brumbaugh regarding the substance of those telephone conversations without objection by counsel for JCAD, wherein he explained:

Well, I was concerned that we didn't win and I was—there were more questions about how the process works and why we represented the case the way we did and, you know, was—was reassured that we intentionally represented it in a way to—to feret [sic] out what might be our—our weakest arguments; not necessarily to try to see if we had good arguments ourselves, but to try to find where our holes were.

When asked if he had seen a copy of the consultant's report, Brumbaugh responded that he had not.

Brumbaugh also answered questions about any changes made as a result of the adverse result of the mock trial and he responded, "we didn't change anything as a result of that trial." Specifically, Brumbaugh testified, "I don't know if anybody else has changed their approach or tactics, but I didn't change anything." When questioned regarding whether there were any recommendations made by the consultants, Brumbaugh responded, "I don't remember. None that influenced me or my approach." Brumbaugh reiterated that he could not recall anything the jury consultant said at the conclusion of the mock trial, or the name of the jury consultant, but he agreed to provide the name at a later date.

Following Brumbaugh's deposition testimony, Total sent JCAD a letter asking JCAD to "supplement [its] response to request for disclosure" with information about JCAD's jury consultant. Because Rule 194.2(f) is expressly limited to requests for information about testifying experts, JCAD refused to supplement its responses to Total's Request for Disclosure with information regarding its jury consultant. *See* Tex.R. Civ. P. 194.2(f). Thereafter, Total filed a Motion to Compel Designation of Undisclosed Experts and Related Discovery; arguing that based on Brumbaugh's deposition testimony, "it is clear that [JCAD's] testifying experts ... reviewed the mental impressions and opinions of [JCAD's] mock trial/jury consul-

tants." Total requested that the trial court compel JCAD to "disclose the identities of the mock trial/jury consultants and disclose the information required by Rule 192.3(e)." Total also requested an order from the trial court allowing Total to depose the jury consultant.

On the morning of the hearing on Total's Motion to Compel, Total served JCAD with the following four interrogatories seeking information about JCAD's jury consultant and the mock trial:

1. With regard to any consulting expert whose mental impressions or opinions have been reviewed by a testifying expert, please provide the expert's name, address, and telephone number.
2. Please identify by name and address all persons present during the Mock Trial which occurred in Beaumont, Texas on or about September 3, 2009.
3. Please identify by name and address all persons present during the Mock Trial follow-up which occurred on or about September 9, 2009.
4. Please identify by name and address the jury consultant in charge of the Mock Trial which took place in Beaumont, Texas on or about September 3, 2009.

Following the hearing, JCAD responded to the interrogatories. In response to interrogatory number one, JCAD responded in part, "None. JCAD's 'jury consultant' is a member of JCAD's trial team. He is not a consulting 'expert' as contemplated by the Texas Rules of Civil Procedure." JCAD further stated in response to interrogatory number one that "no mental impressions or opinions of the jury consultant were reviewed by any testifying expert," and objected that "such information is protected from disclosure by the work product privilege." JCAD asserted various other objections and privileges in response to the remaining three interrogatories, including objections on the basis of relevance and attorney-client and work product privileges.

By order dated January 14, 2010, the trial court granted Total's motion to compel the identity of JCAD's consulting expert "for discovery purposes only" and further required JCAD to "supplement its responses to Plaintiffs' discovery requests" to "identify the consultant(s) who conducted the subject mock trial so that he/they can be deposed by Plaintiffs." Thereafter, JCAD filed a motion to reconsider, motion for protective order, request for an *in camera* review and request for hearing. After a hearing, by order dated February 5, 2010, the trial court denied the motion to reconsider and motion for protective order, overruled each JCAD's objections and privileges asserted in response to Total's interrogatories, and affirmed its prior order granting Total's motion to compel. Thereafter, JCAD filed this petition for writ of mandamus.

MANDAMUS

 An appellate court may issue a writ to correct an abuse of discretion for which relator has no adequate remedy by appeal. *See Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding). A failure by the trial court to apply the law correctly constitutes an abuse of discretion. *Id.* at 840. Likewise, a trial court abuses its discretion when it orders discovery exceeding the scope permitted by the rules of procedure. *In re CSX Corp.,* 124 S.W.3d 149, 152 (Tex.2003) (orig. proceeding); *see also In re Weir,* 166 S.W.3d 861, 865 (Tex.App.-Beaumont 2005, orig. proceeding). When a trial court orders disclosure of privileged information, the aggrieved party lacks an adequate remedy by appeal and mandamus will lie. *See*

*Huie v. DeShazo,* 922 S.W.2d 920, 928 (Tex.1996) (orig. proceeding); *In re Baptist Hosp. of Se. Tex.,* 172 S.W.3d 136, 139 (Tex.App.-Beaumont 2005, orig. proceeding).

## DEPOSITION OF THE TRIAL/JURY CONSULTANT

"In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action[.]" TEX.R. CIV. P. 192.3(a). "While the scope of discovery is quite broad, it is nevertheless confined by the subject matter of the case and reasonable expectations of obtaining information that will aid resolution of the dispute." TEX.R. CIV. P. 192, TEXAS RULES OF COURT, VOL. I, STATE 97, cmt. 1 (West 2010); *see also In re Am. Optical Corp.,* 988 S.W.2d 711, 713 (Tex.1998) ("[Discovery] requests must be reasonably tailored to include only matters relevant to the case."). The Texas civil procedure and evidence rules protect the work product and attorney-client privileges that developed from Texas common law. *In re Baptist Hosp.,* 172 S.W.3d at 139. "Work product" is defined under the rules of procedure as:

> (1) material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents; or
>
> (2) a communication made in anticipation of litigation or for trial between a party and the party's representatives or among a party's representatives, including the party's attorneys, consultants,

sureties, indemnitors, insurers, employees, or agents.

TEX.R. CIV. P. 192.5(a). "[T]he work product of an attorney or an attorney's representative that contains the attorney's or the attorney's representative's mental impressions, opinions, conclusions, or legal theories—is not discoverable." TEX.R. CIV. P. 192.5(b)(1). "Any other work product is discoverable only upon a showing that the party seeking discovery has a substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means." TEX.R. CIV. P. 192.5(b)(2).

 " 'The primary purpose of the work product rule is to shelter the mental processes, conclusions, and legal theories of the attorney, providing a privileged area within which the lawyer can analyze and prepare his or her case.' " *In re Bexar County Criminal Dist. Atty's Office,* 224 S.W.3d 182, 186 (Tex.2007) (quoting *Owens–Corning Fiberglas Corp. v. Caldwell,* 818 S.W.2d 749, 750 (Tex.1991)). The work product privilege "promote[s] the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery efforts of the opponent." *Wiley v. Williams,* 769 S.W.2d 715, 717 (Tex. App.-Austin 1989, orig. proceeding); *see generally In re Certain Underwriters at Lloyd's London,* 294 S.W.3d 891, 898 (Tex. App.-Beaumont 2009, no pet.) (The work product privilege "protects materials and mental impressions prepared 'in anticipation of litigation' from discovery."). We conclude that the jury consultant was retained to assist JCAD's counsel with case strategy and presentation in anticipation of trial.[1] In his affidavit, submitted with

---

1. JCAD initially submitted the affidavit of the jury consultant *in camera* with its motion to reconsider and, thereafter, served a copy of the affidavit, with all identifying information redacted, on Total. In his affidavit, submitted with JCAD's motion to reconsider, the jury consultant stated that pursuant to the engagement letter he sent to JCAD, he and JCAD's

JCAD's motion to reconsider, the jury consultant stated that the goal of the mock trial/focus group he conducted "was to determine how to best present the facts to a jury." He further explained that his "mental impressions and opinions regarding how to best present the facts were then provided in a confidential report to JCAD's lawyers ... several weeks later." As we explained in *In re Baptist Hospitals*:

> [T]he '[p]roper presentation of a client's case demands that [the attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.'

*In re Baptist Hosps.*, 172 S.W.3d at 139 (quoting *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947)).

In *Baptist Hospitals*, Baptist sued various contractors and engineering and architectural firms asserting claims related to the design and construction of a surgical center owned by Baptist. Beaumont Surgical Affiliates ("BSA"), real party in interest, was Baptist's tenant at the center. BSA intervened in the lawsuit claiming Baptist breached the lease by failing to provide suitable premises. *Id.* In asserting its right to depose one of Baptist's attorneys, BSA presented affidavits stating the attorney was involved in observing, investigating, monitoring, reviewing, and evaluating the technical problems at the surgery center. *Id.* at 142. BSA argued that the attorney's involvement in that case was not the work of an attorney, but was more akin to the work of an engineer, construction manager, or relationship manager. *Id.* In holding that the trial court abused its discretion in ordering the deposition of trial counsel, we stated:

> Every attorney of record in a case being litigated, or in a case where litigation is anticipated, obtains 'factual, relevant information.' Performing the function of a lawyer does not preclude a litigation attorney from observing, investigating, monitoring, and evaluating the facts surrounding the matter in controversy. The evidence does not show [the attorney] was a fact witness divorced from the litigation. His work was reasonably related to and in furtherance of the prosecution of Baptist's case against the defendants, and also related to mitigating its damages regarding BSA and to defending against BSA's causes of action. We conclude his activities fall within the Rule 192.5 work product definition.

*Id.* at 143. The same holds true for work performed in anticipation of trial by an attorney's consultants, employees, and agents. Tex.R. Civ. P. 192.5(a)(1).

▇ Discovery of the jury consultant's discussions with JCAD's legal counsel, including notes of such discussions, may reflect the mental impressions and legal theories of JCAD's counsel. Therefore, such information goes to the core of the work product doctrine and is not discoverable. *See* Tex.R. Civ. P. 192.5(b)(1). Likewise,

---

counsel agreed that he was "neither being retained as an expert witness on liability or damages issues, nor as a consulting expert." He explained that he specializes in "case presentations, witness communications, trial strategy and jury selection" and confirmed that he had "no factual knowledge about this case except for knowledge acquired from ... [JCAD's] counsel." He further stated that he has "no specialized knowledge or expertise relating to any of the substantive issues in this case" and has "never formed any opinions or mental impressions relating to the subject matter or claims or defenses in this case."

any material or impressions developed by the jury consultant in anticipation of trial that reflect the consultant's opinions or conclusions is ordinarily not discoverable, unless otherwise disclosed or reviewed by a testifying expert. *See id.; see also* TEX.R. CIV. P. 192.3(e). Work product that does not reflect the impressions, opinions, conclusions, or legal theories of JCAD's counsel or the jury consultant may be discoverable only upon a showing "that the party seeking discovery has substantial need of the materials in the preparation of the party's case" and the party is unable to obtain the materials by other means "without undue hardship[.]" TEX.R. CIV. P. 192.5(b)(2). The Total entities have not made, or attempted to make, such a showing nor have they identified any evidence

in the record showing that such information was reviewed by a testifying expert. *See id.; see also* TEX.R. CIV. P. 192.3(e). Total is not entitled to depose the jury consultant. *See* TEX.R. CIV. P. 192.5, 192.3(e).

■ Total argues that JCAD waived the work product privilege by allowing its testifying experts to view the mock trial. *See generally* TEX.R. CIV. P. 192.5(c)(1), 192.3(e). We disagree. Brumbaugh testified that he had not seen a copy of the jury consultant's report. Additionally, JCAD submitted uncontroverted affidavits from its testifying experts, JCAD's counsel, and the jury consultant, which establish that no privileged information was disclosed to JCAD's testifying experts in conjunction with their viewing of the mock trial.[2] In

2. With its motion to reconsider and motion for protective order, JCAD submitted affidavits from its testifying experts, Brumbaugh and Paul Hornsby, as well as an affidavit from counsel for JCAD, and an affidavit from the jury consultant for *in camera* review by the court.

In Brumbaugh's affidavit he stated that he attended the mock trial, but remained in a viewing room where he viewed the entire proceeding on a monitor. Brumbaugh stated that he met the jury consultant but otherwise had limited contact with the consultant. Brumbaugh stated, "at no time ... did the [jury] consultant ever give any opinions or mental impressions related to this case." Brumbaugh further stated, "I have not been in communication with the [jury] consultant since [the date of the mock trial], not have I ever viewed any written communication from him or reports prepared by him."

Total has not sought to depose JCAD's other designated testifying expert, Paul Hornsby. In his affidavit, Hornsby also stated that he viewed the mock trial on a monitor in the viewing room, that on the date of the mock trial he had limited contact with the jury consultant, and that the jury consultant did not give any opinions or mental impressions relating to the case. Hornsby likewise stated that he has not been in communication with the consultant since the date of the mock trial

and has never viewed any written communication from him or reports prepared by him.

In an affidavit submitted by counsel for JCAD, counsel stated that he also viewed the mock trial and jury deliberations from a monitor in the viewing room. According to counsel, the consultant introduced himself to those in the viewing room but "except during a brief lunch, the [jury] consultant was not in the [v]iewing [r]oom." Counsel stated that "[a]t no time [on the date of the mock trial] ... did the [jury] consultant ever express any opinions or mental impressions." According to counsel, "[a]pproximately two weeks following [the mock trial date] the [jury] consultant delivered a report to trial counsel containing his opinions relating to the mock trial/focus group." Counsel confirmed that "[n]either Mr. Hornsby nor Mr. Brumbaugh has ever seen the [jury] consultant's report, and none of the contents of the report has otherwise been disclosed to them."

The affidavit of the jury consultant, submitted *in camera*, stated "[t]hroughout the data gathering process on [the date of the mock trial], I had neither formed nor did I state any opinions or mental impressions regarding how to best present the facts." Additionally, the affidavit stated, "[f]urthermore mock trials/focus groups do not cause me to form any opinions or mental impressions relating to the subject matter [of the case]." "Any mental

support of its contention that JCAD waived its work product privilege, Total cites Rule 192.3(e) of the Texas Rules of Civil Procedure and *In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 438 (Tex. 2007) (orig. proceeding).

Rule 192.3(e) of the Texas Rules of Civil Procedure allows the discovery of certain information "regarding a consulting expert whose mental impressions or opinions have been reviewed by a testifying expert[.]" TEX. R. CIV. P. 192.3(e).[3] *Christus* involved documents related to an internal investigation performed by Christus Spohn Hospital and inadvertently produced by a paralegal[4] to the hospital's testifying expert. *In re Christus*, 222 S.W.3d at 436. The plaintiff sought to depose the hospital's expert and requested all documents fur-

nished to the expert in connection with her consultation on the case. *Id.* Documents related to the hospital's internal investigation were brought to the deposition, at which time the hospital's counsel learned they had been forwarded to the expert. *Id.* As a matter of first impression, the Supreme Court held that expert-disclosure rules set forth in Rule 192.3 precluded the snap-back of documents inadvertently produced so long as the expert remained designated to testify at trial. *Id.* at 438–45. Here, the evidence establishes that JCAD has not produced, or otherwise disclosed the contents of, the jury consultant's report to its testifying experts. *See* TEX.R. CIV. P. 192.3(e), 192.5(c)(1). *Christus* is inapplicable to the present case.[5]

---

impressions and opinions regarding how to best present the facts to a jury were not formed until after the mock trial/focus group was completed.... My mental impressions and opinions regarding the [sic] how to best present the facts were then provided in a confidential report to JCAD's lawyers only several weeks later." "Following the mock trial, I have neither met nor communicated with Mr. Hornsby or Mr. Brumbaugh."

3. Texas Rule of Civil Procedure 192.3(e) provides as follows:

(e) *Testifying and Consulting Experts.* The identity, mental impressions, and opinions of a consulting expert whose mental impressions and opinions have not been reviewed by a testifying expert are not discoverable. A party may discover the following information regarding a testifying expert or regarding a consulting expert whose mental impressions or opinions have been reviewed by a testifying expert:

(1) the expert's name, address, and telephone number;

(2) the subject matter on which a testifying expert will testify;

(3) the facts known by the expert that relate to or form the basis of the expert's mental impressions and opinions formed or made in connection with the case in which the discovery is sought, regardless of when and how the factual information was acquired;

(4) the expert's mental impressions and opinions formed or made in connection with the case in which discovery is sought, and any methods used to derive them;

(5) any bias of the witness;

(6) all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of a testifying expert's testimony;

(7) the expert's current resume and bibliography.

TEX.R. CIV. P. 192.3(e).

4. According to the Hospital's counsel, the paralegal who sent the documents to the Hospital's testifying expert had recently moved to Texas from California, where she understood that all materials forwarded to an expert witness remained confidential. She assumed the same rule applied in Texas.

5. Total also cites *Tom L. Scott, Inc. v. McIlhany*, 798 S.W.2d 556, 559 (Tex.1990) (orig. proceeding) and *In re Family Hospice, Ltd.*, 62 S.W.3d 313, 315 (Tex.App.-El Paso 2001, orig. proceeding), in support of its waiver argument. In *McIlhany*, the Texas Supreme Court held that parties could not circumvent the discovery rules by re-designating their testifying experts as consulting only experts. *McIlhany*, 798 S.W.2d at 560. Similarly, in

Total further argues that it is "not seeking any information beyond what has been seen or heard by the testifying experts." Significantly, however, Total was not precluded from questioning JCAD's testifying experts regarding what they saw or heard at the mock trial. Total questioned Brumbaugh extensively regarding the mock trial and how, if at all, the mock trial affected his expert opinion. *See* Tex.R. Civ. P. 192.3(e)(3). As pointed out by Total, JCAD lodged no objections to these questions.[6] *See* Tex.R. Civ. P. 199.5(e), (f). Total has not sought to depose JCAD's other testifying expert, Paul Hornsby. Because Total is not entitled to depose the jury consultant, the trial court's order granting Total's motion to compel was improper.

## TOTAL'S INTERROGATORIES

▮ Generally, the trial court has discretion to control the scope of discovery for the cases over which it presides. *See Dillard Dep't Stores, Inc. v. Hall,* 909 S.W.2d 491, 492 (Tex.1995) (orig. proceeding). However, its discretion is not unlimited, as the trial court is obligated to make an effort to impose reasonable discovery limits. *In re Am. Optical Corp.,* 988 S.W.2d at 713. Ordering discovery that exceeds "that permitted by the rules of procedure" constitutes an abuse of discretion. *Texaco, Inc. v. Sanderson,* 898 S.W.2d 813, 815 (Tex.1995). The trial court's order of February 5, 2010, denied JCAD's motion for protective order and overruled each of JCAD's objections and privileges asserted in response to the in-

terrogatories of Total. The identity of persons present during the mock trial or during any follow-up communications regarding the mock trial, as sought in Total's interrogatories, is irrelevant and outside the proper scope of discovery. *See generally* Tex.R. Evid. 401; *see also* Tex.R. Civ. P. 192.3, 192.5.

## CONCLUSION

We find the trial court abused its discretion in ordering discovery that exceeds the scope permitted by the rules, and JCAD has no adequate remedy by appeal. *See Walker,* 827 S.W.2d at 843. The writ of mandamus is conditionally granted. The trial court shall vacate its orders signed on January 14, 2010, and February 5, 2010. We are confident the trial court will comply with this opinion. A writ will issue only if the trial court fails to comply.

WRIT CONDITIONALLY GRANTED.

---

*In re Family Hospice,* the court held that because the documents at issue were "the product and/or documentation of the mental impressions of a testifying expert," the documents were discoverable. *In re Family Hospice, Ltd.,* 62 S.W.3d at 316. Neither *McIlhany* nor *In re Family Hospice* involved waiver.

6. Total appears to recognize the same. In its response to JCAD's petition, Total states that "[d]uring Brumbaugh's deposition, TOTAL's attorney asked at least a dozen different questions concerning the details of the mock trial and its follow up. Brumbaugh responded to each question without objection."